# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HINTON AND ALS. V. BLAND'S ADM'R AND ALS.

### APRIL 8th, 1886.

### Absent, HINTON, J.

1. CHANCERY PRACTICE—*Lunatics—Committees—Guardians ad litem.*
It is only where there is no committee, or where there is a conflict
of interest between the committee and the lunatic, that it becomes
necessary to appoint a guardian *ad litem* for the insane defendant.
Code 1873, ch. 167. sec. 17.

2. IDEM—*Partitions—Accounts.*—Court of equity hath authority to pass
upon all questions necessary to justice between the parties, in suits
for partition, such as accounts of liens and priorities on the lands to
be partitioned.

3. IDEM—*Parties—Objections.*—Where defect of parties is apparent on
the record, objections may be made in the appellate court for first
time.  *L. I. Co.* v. *Tayloe,* 79 Va. 671.

4. IDEM—*Parties—Administrator d. b. n.*—Administrator *de bonis non*
is entitled to all the personal estate of intestate which has not been
converted by the former administrator.   And where in a suit there
is money ordered to be paid to the intestate's estate, the adminis-
trator *de bonis non* must be a party.

Appeal from decrees of circuit court of Petersburg, pro-
nounced December 17th, 1881, and July 9th, 1883, respectively,
in a suit in equity therein pending, in which John R. Hinton
and Ella, his wife; F. M. Wright and John W. Bradbury, sur-
viving partners, &c.; and James F. Epes, administrator of F.
C. Williams, deceased, are the plaintiffs, and William E. Hin-

ton, Jr., and Mary R., his wife; Drury A. Hinton, committee of Nannie O. Bland; William R. Bland, late curator of the estate of Thomas P. Bland, deceased; George C. Bland, executor of Matthew R. Bland, deceased; and William R. Watkins, administrator *d. b. n.* of said Thomas P. Bland, deceased, are defendants.

In 1860 Thomas P. Bland, and in 1863, his son, John E. Bland, died intestate, leaving large estates. The same persons are the heirs of both decedents, being the daughters of the former and the sisters of the latter, to-wit: Ellen, the wife of John R. Hinton; Mary, wife of William E. Hinton, Jr., and Anna O. Bland, a lunatic. In 1863 John R. Hinton and wife filed their bill against the decedents' representatives for partition of land. Report had been made when, in 1865, the papers were destroyed. In 1868, by consent, the cause was re-instated. John R. Hinton and wife then excepted to the report on the ground that the tract of land called "Caskies," allotted to them, was subject to a lien for a balance of purchase money due to F. C. Williams, executor of D. G. Williams, deceased, and it was decreed that a commissioner inquire and report as to this lien. The report showed its amount to be $4,236.68; and at November term, 1871, the cause was heard on this report, and on a written agreement between William E. Hinton, John R. Hinton, and W. L. Watkins (who had qualified as administrator of Thomas P. Bland), whereby certain matters between them were settled, and William E. and John R. Hinton agreed to pay each one-third of said lien. The report was confirmed, and Watkins decreed to pay the amount to F. C. Williams, executor of D. G. Williams.

In 1880, F. C. Williams having died, James F. Epes, his administrator, petitioned to have the amount paid to him. The report having been then recommitted, was returned in 1881. Exceptions were filed. D. A. Hinton, committee, peti-

tioned for a rehearing of the decree of November term, 1871. At July term, 1883, William E. Hinton and wife filed a similar petition. Watkins and Epes answered both petitions. The court refused to re-open the decree complained of, because it was a consent decree as to William E. Hinton and wife and John R. Hinton, and also because the petitions did not state with sufficient distinctness the evidence relied on, and support the same by affidavits. A decree was thereupon entered overruling all the exceptions but that of D. A. Hinton, committee, and ordering certain payments to Watkins' administrator, &c., by William E. and John R. Hinton, and the payment by them and D. A. Hinton, committee, to Epes, administrator of F. C. Williams, deceased, of $3,152, the balance found due upon the lien on "Caskies." The administrator *d. b. n.* of D. G. Williams was not a party to the suit.

From this decree the Hintons appealed.

*H. L. Lee* and *W. W. Gordon,* for the appellants.

*W. W. Henry, J. P. Fitzgerald* and *Friend & Davis,* for the appellees.

LEWIS, P., delivered the opinion of the court.

The first objection, which relates to the refusal of the circuit court to appoint a guardian *ad litem* for the insane defendant, Anna O. Bland, on the motion of D. A. Hinton, her committee, is not well taken.

It appears that in 1863, a suit was instituted in the county court of Nottoway for a partition and division of the real and personal estates of Thomas P. and John E. Bland, deceased, to which the said Anna O. Bland, then of sound mind, was a party defendant. An order was entered appointing commis-

sioners to divide the lands, who duly executed the order and reported their action to the court.

Subsequently, however, to-wit: in 1865, and without any further steps having been taken in the suit, the public records of the county were destroyed, and accordingly the bill filed at the February term, 1868, after setting forth, substantially, the foregoing facts, prays that the suit be re-instated, and that such relief be granted as the parties may be entitled to. It suggests the insanity of the defendant, Anna O. Bland, and the appointment and qualification of D. A. Hinton as her committee; and upon the filing of the bill the suit was re-instated.

The committee answered the bill, and not only was the suit re-instated, but, *quoad* the insane defendant, was in effect revived in the name of her committee. And the committee having been thus made a party, and there being no conflict of interest between the committee and the lunatic, the appointment of a guardian *ad litem* was unnecessary.

The powers and duties of committees of insane persons are in Virginia prescribed by statute. And by section 48 of chapter 82 of the Code of 1873 it is enacted, that "the committee of an insane person shall be entitled to the custody and control of his person (when he resides in the State, and is not confined in an asylum or jail), shall take possession of his estate, and may sue and be sued in respect thereto," etc.

Under this statute it was held in *Bird's Committee* v. *Bird*, 21 Gratt. 712, and in *Cole's Committee* v. *Cole's Adm'r*, 28 Id. 365, that a suit on behalf of the lunatic respecting his person or estate must be in the name of the committee, if there be one. And such, it would seem, is the general rule independently of statute.

Infants, says Judge Story, institute a suit in equity by their next friend, but they defend by a guardian, who is appointed by the court for that purpose. In respect to idiots and lunatics,

however, the rule is different. The latter, he observes, "defend a suit by their committees, who are by an order of court appointed guardians *ad litem,* as a matter of course, in ordinary circumstances. But if an idiot or lunatic has no committee, or the committee has an interest opposite to that of the person whose property is intrusted to his care, an order may be obtained for appointing another person, as guardian *ad litem,* for the purpose of defending the suit." Story's Eq. Pl., sec. 70.

In *Brasher's Ex'ors* v. *Van Cortland,* 2 Johns. Ch. 242, which was a suit against certain persons who had been appointed a committee of a lunatic, to obtain payment of a debt due by the lunatic, it was held that it was not necessary to join the lunatic with his committee as a party defendant. "If he had been joined," said Chancellor Kent, "it would seem to be mere matter of form, and the committee would have been directed, as of course, to put in his answer as his guardians. It would have been their answer, though in his name. If he be made a defendant, he is to answer by his committee. * * Though the books speak of the lunatic as a proper party, yet I do not perceive its necessity."

It is only where there is no committee, or where there is a conflict of interest between the committee and the lunatic, that it becomes necessary to appoint a guardian *ad litem* for an insane defendant. At all events, such is the law of this State, since not only is the estate of the lunatic entrusted to the committee, but by the express provision of the statute the latter may be sued in respect thereto. And it was, doubtless, with a view to provide for the contingency just mentioned that the statute was passed, upon which counsel rely, which enacts as follows: "The proceedings in a suit wherein an infant or insane person is a party, shall not be stayed because of such infancy or insanity, but the court in which the suit is pending, or the clerk at rules, may appoint a guardian

*ad litem* to any infant or insane defendant, whether such defendant shall have been served with process or not. The court may compel the person so appointed to act, but he shall not be liable for costs, and shall be allowed his reasonable charges, which the party on whose motion he was appointed shall pay." Code 1873, chapter 167, section 17.

This view is further supported by the provisions of section four, chapter 169 of the Code, which provides that a suit against a party who is insane may be revived in the name of the committee of such party, and thereafter proceeded in in the name of the committee. Here, no provision is made for the appointment of a guardian *ad litem*, and, doubtless, for the reason that the suit being continued in the name of the committee, whose powers and duties are prescribed by the statute already adverted to, no such provision, in the judgment of the legislature, was necessary.

We conclude, therefore, that the insane defendant was sufficiently represented in the suit by her committee, and that there was no error in overruling the motion for the appointment of a guardian *ad litem*.

The next objection is, that it was error to order an account to be taken to ascertain the liens on the real estate of which partition was sought by the bill. But this position is clearly untenable, since such an account was necessary in order to ascertain the character and amount of the liens on the several parcels of land, and thereby to enable the court to do justice between the parties. In other words, to grant the relief prayed for in the bill.

"In all cases of partition," says Judge Story, "a court of equity does not act merely in a ministerial character, and in obedience to the call of the parties, who have a right to the partition; but it founds itself upon its general jurisdiction as a court of equity, and administers its relief *ex aequo et bono*,

according to its own notions of general justice and equity between the parties.  It will, therefore, by its decree, adjust all the equitable rights of the parties interested in the estate," etc. 1 Story's Eq., section 656 *b*.  See also Code 1873, chapter 120, section one; 2 Min. Insts. 417.

The next objection presents a more important question, and is, in our opinion, well founded.  It is that the administrator *de bonis non* of D. G. Williams, deceased, is not before the court, and that the decree requiring payment of the balance of purchase money due on the tract of land called "Caskies," is in favor of the administrator of F. C. Williams, deceased, who was the executor of the said D. G. Williams, deceased, and by whom the land was sold to Thomas P. Bland in 1858, the legal title being retained as security for the payment of the purchase money.

It appears, that upon the filing of the bill, at the February term, 1868, it was referred to a commissioner to take certain accounts, who reported the debt due to F. C. Williams, executor, by the estate of Thomas P. Bland, on account of the purchase of the land, to be $4,236.68.  This report, to which there was no exception, was confirmed by a decree entered on the 6th of November, 1871, and before any further steps were taken in the cause, F. C. Williams died, and James F. Epes was appointed his administrator.

It does not appear, however, that there was any intention on the part of Williams, in his lifetime, to convert to his own use the debt due by the Bland estate, or that, at the time of his death, he was in advance to the estate of his testator, and that the debt in question was, therefore, necessary for the indemnity of his estate.  The petition of Epes, as administrator, filed on the 30th of September, 1880, claims the debt as due to the estate of his intestate; but neither in his petition nor in his answer to the petition of William E. Hinton, filed on

the 8th of June, 1882, are any grounds set forth upon which his asserted claim ought, in equity, as against the administrator *de bonis non*, be sustained. Nor is the case, as made by the petition, entirely consistent with the averments of the answer. Thus, the petition alleges that the debt was evidenced by *bond*, whereas the answer avers that respondent cannot state positively whether a bond was executed or not, but that he is informed none was executed. It also avers that the executor, in his lifetime, charged himself with all bonds due the estate of his testator, from which it may be inferred that debts not thus evidenced were not so charged. At all events (and this is all we decide), the administrator *de bonis non* is an indispensable party to a final adjudication of the matters in controversy.

In *Wernick* v. *M'Murdo*, 5 Rand. 51, the question as to the rights of an administrator *de bonis non* was elaborately discussed, though the point decided was, that an administrator *de bonis non* cannot sue the representative of a former executor or administrator for assets wasted or converted by the first executor or administrator, but that suit may be brought directly by creditors, legatees, or distributees. The administrator *de bonis non* "is appointed," it was said, "to finish a business already commenced. It is not, therefore, a full and immediate administration which is committed to him, such as is granted to a temporary administrator, but an administration *de bonis non administratis*"; that is to say, he is entitled to all the goods and personal estate which have not been converted by the former executor or administrator.

And a change or conversion of the goods, so as to amount to an administration, has been held to mean a change in *the property* of the goods—not a change in specie. Thus, where an executor collected a debt of his testator, and kept the money separate in a bag, it was held, after his death, to belong to the

administrator *de bonis non*. And in *Clarke* v. *Wells*, 6 Gratt. 475, it was said that while the sale by an executor or administrator of his decedent's goods and effects, though upon a credit, must be treated at law as a conversion thereof, yet that this rule is subject to exceptions in a court of equity; and accordingly it was held in that case, that inasmuch as it did not appear that the collection of certain sale bonds, payable to the first administrator, was necessary for the reimbursement or indemnity of his estate, they passed to the administrator *de bonis non* of the first decedent.

The same principle was recognized in *Tyler* v. *Nelson*, 14 Gratt. 214, where it was said that "bonds taken by an executor or administrator for property belonging to the estate of his decedent and lawfully sold by him and remaining uncollected at the time of the death of such executor or administrator, may be claimed in equity by the administrator *de bonis non*." And his right to recover will depend, as we have seen, upon the circumstances of the case. See also *Heffernan* v. *Grymes*, 2 Leigh, 556, and note to the case of *Potts* v. *Smith*, 24 Am. Dec. 383 *et seq.*, where the cases are collected.

It is needless, however, to cite further authority, or to say more, to show that the circuit court of Petersburg, to which the cause had been removed, ought not to have adjudged the balance of purchase money due on account of the land to belong to the administrator of the deceased executor, F. C. Williams, without having the administrator *de bonis non* of D. G. Williams, deceased, before the court. The latter has moved in this court, since the allowance of the appeal, to be made a party, but as the cause must be remanded to the circuit court for further proceedings, a motion to the same effect can be made in the latter court, to which the cause will be remanded with directions to make the administrator a party, in order to a final decree.

It is obvious that in the absence of the administrator, there can be no final adjudication of the matters in controversy, and therefore that the objection for want of parties may be made for the first time in the appellate court. *Armentrout* v. *Gibbons,* 25 Gratt. 371; *Clayton* v. *Henley,* 32 Id. 65; *Lynchburg Iron Co.* v. *Tayloe,* 79 Va. 671.

It follows, therefore, that the proceedings subsequent to the death of F. C. Williams are not now properly before us for review, so far, at least, as the merits of the case are concerned. We therefore express no opinion as to the questions sought to be raised by the petitions of William E. Hinton and wife and D. A. Hinton, committee, &c., to rehear the decree of November 6, 1871. It was argued on behalf of the appellees that that decree was a consent decree, and therefore not reviewable, either on appeal or petition to rehear. Citing 2 Dan. Ch. Pr., chapters 25 and 32, pp. 973, 1459; *Burton* v. *Brown,* 22 Gratt. 1; *Thompson* v. *Maxwell,* 95 U. S. 391.

Whatever force the argument may have so far as it relates to William E. Hinton, who was a party to the written agreement upon which that decree was in part based, it has no application to D. A. Hinton, committee, as to whom it does not affirmatively appear from the record that the decree was by consent. But as these are questions affecting the rights of the administrator *de bonis non,* they will be the proper subject of adjudication in the court below after the cause is remanded, and the administrator is before the court.

The decree of the 9th of July, 1883, will therefore be reversed, and the cause remanded with directions: 1. To cause the administrator *de bonis non* of D. G. Williams, deceased, to be made a party to the suit; 2. To adopt as correctly ascertaining the rights of the parties, as of the date of its confirmation, the report of Commissioner Jackson as confirmed by the decree of November 6, 1871, unless upon petition or petitions to rehear

the said decree, supported by good and sufficient grounds, the circuit court shall deem it proper to rehear and set aside the same; and 3. To take such further steps as may be necessary in order to a final decree.

Decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that there was no error in overruling the motion to appoint a guardian *ad litem* for the insane defendant, Anna O. Bland, nor in directing the accounts to be taken of which the appellants complain. But the court is futher of opinion that the said circuit court erred in its decree of the 9th day of July, 1883, in decreeing in favor of James F. Epes, administrator of F. C. Williams, deceased, without having before it the administrator *de bonis non* of D. G. Williams, deceased.

It is, therefore, decreed and ordered that the said last mentioned decree be reversed and annulled, and that the appellee, James F. Epes, administrator of F. C. Williams, deceased, pay to the appellants, out of the estate of his intestate in his hands to be administered, their costs by them expended in the prosecution of their appeal aforesaid here. And this cause is remanded to the said circuit court with directions: 1. To cause the administrator *de bonis non* of D. G. Williams, deceased, to be made a party to the suit; 2. To adopt as correctly ascertaining the rights of the parties, as of the date of its confirmation, the report of Commissioner Jackson as confirmed by the decree of November 6, 1871, unless upon petition or petitions to rehear the said decree, supported by good and sufficient grounds, the circuit court shall deem it proper to rehear and set aside

Decree.

the same; and 3. To take such further steps as may be necessary in order to a final decree.

Which is ordered to be certified to the said circuit court of the city of Petersburg.

DECREE REVERSED.