# Richmond

LILLIAN COUNTS v. E. V. COUNTS, COMMITTEE.

January 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*S. H. & George C. Sutherland,* for the appellant.

*J. C. Smith,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This is a suit in chancery to annul the marriage of Jessee Counts to Lillian Counts, who was Lillian Lambert, on the ground of the insanity of Jessee Counts, at the time the marriage was solemnized between them.

The suit was instituted by E. V. Counts, committee for Jessee Counts, and this mode of procedure is attacked by the appellant, who contests the legal right of the committee of an insane person to bring such a suit. We will presently address ourselves to this feature of the case.

On June 27, 1918, Jessee Counts enlisted in the service of the World War. He remained in the American army until November 5, 1919, when he was honorably discharged. In battle overseas he was gassed, and it appears from the evidence that he never recovered from the effects of this ordeal. On his return to the United States from Germany after the armistice was signed he was committed, after governmental medical examination, to a hospital in New York for mental disorder. He was transferred from New York in November to Williamsburg, Virginia, to the Southeastern State Hospital for the Insane at that place. It is not clear from the evidence just how long he remained at Williamsburg. His father, N. K. Counts, visited him there and learned from a physician at the hospital that he had been adjudged insane and his condition was such that the father was informed that he could not take him home. Subsequently, through the offices and influence of a member of Congress, he was allowed to visit his parents in Dickenson county. It does not appear from the evidence how long the visit continued

or whether he was returned to Williamsburg, but on January 4, 1921, an admission card was issued by the examining officer of the United States Patients Hospital Service, Washington, D. C., admitting him to the Southwestern State Hospital at Marion, Virginia, for examination and treatment, and on March 4, 1921, he was admitted and became a patient of the Davis Clinic, a unit for the care of nervous and mentally affected World War veterans.

Jessee Counts twice escaped from the Southwestern State Hospital, first on July 1, 1921, and again on August 30, 1921, and went to his parents' home. On March 29, 1922, after the second escape, and during the time he was at home, he was married to Lillian Lambert, the appellant. She was a neighborhood girl, living some four miles from the N. K. Counts home, and it is in evidence that Jessee Counts visited her and paid her attentions culminating in the marriage. The ceremony was performed by the Rev. J. Walker Counts, an uncle of Jessee. They lived together for several months, when the husband left and went to his father's home and never returned to his wife. Subsequently he was taken back to the hospital at Marion and was discharged on June 30, 1922, as being mentally improved, and was re-admitted on February 9, 1923, where he still was at the time of the institution of this suit.

The evidence of the lay witnesses as to his mental capacity at the time of his marriage and prior thereto, including the time of his first attentions to the appellant, to enter into a contract of marriage is conflicting, though we think its weight is to the effect that he was not mentally competent to so contract.

The evidence, however, of Dr. George A. Wright, who was first assistant physician at the Southwestern State Hospital at Marion, when Jessee Counts was first admitted there as a patient, and who subsequently became the superintendent of the institution, is very clear and conclusive, we think, as to the seriousness of Jessee Counts' mental disorder and its effect upon his capacity to understand

any transaction and to enter into any legal or binding contractual relations.

His testimony in part is as follows:

"Q. State whether or not between the dates of July 1, 1921, and June 1, 1922, he was at any time discharged from your institution as being improved or authorized to leave the institution?

"A. No.

"Q. I will ask you, Doctor, to state the type of his affliction, if it was of a chronic nature when he came here and if so whether it has continued so since?

"A. The diagnosis made at various times in the case of Jessee Counts is dementia praecox, hebephrenic type, which form of mental trouble is generally regarded by authorities on nervous and mental diseases to be chronic. His trouble exists in its same nature.

"Q. State whether or not the patient afflicted in the mental condition as you have stated is capable of knowing or acting in contracting or doing legal business, in your opinion?

"A. This patient from the time of his original admission and at the present time has been rated as insane and incompetent.

"Q. State whether or not, in your opinion, one suffering with this type of mental trouble as Jessee Counts is, do you consider him competent to enter into a marriage contract?

"A. I do not.

"Q. State whether or not, in your opinion, this patient, Jessee Counts, will ever be cured of the disease that he is suffering?

"A. According to my experience and the experienced authorities in the treatment of nervous and mental diseases, statistics can show this particular mental trouble is rarely if ever cured."

On cross-examination he testified:

"Q. To what extent, if any, do persons afflicted as Jessee Counts is, have lucid intervals?

"A. In this particular type of mental trouble, hebephrenic dementia praecox, the patient may at times appear or approach the normal; however, we have no case on record in which this patient has regained his normal mentality.

"Q. In your examination in chief you stated that, in your opinion, Jessee Counts was mentally incapacitated from entering into a marriage contract, by that did you mean that one must possess mental qualifications equivalent to enter into any other contract in order for it to be a lawful marriage?

"A. I would base my answer on that question on my knowledge of the mental condition of this type of case in general which cases and which case has been rated over a long period of years as being insane and incompetent."

In 1927, N. K. Counts was notified by the United States Veterans' Bureau that he and his wife were entitled, under the law, to certain compensation, as the parents of Jessee Counts, which they received until the appellant, as the wife of Jessee, made claim to the bureau for compensation. All payments were then stopped by the government, pending the result of some appropriate court action to test the validity of the aforesaid marriage. The evidence tends to prove that such action was required by the United States governmental authorities.

The bill of the complainant in the court below alleged the facts substantially as we have stated them. The answer of the defendant denied the most material of the allegations and it affirmed that Jessee Counts was not insane at the time of the marriage nor prior thereto during the courtship of the parties.

The defense was also made that the suit was improvidently instituted, as above referred to; that Jessee Counts had never been legally adjudged insane; that E. V. Counts had never been legally constituted his trustee; and that the complainants are precluded by laches from prosecuting this suit. It is urged that the basis of the suit is the

venal purpose of Jessee's family to secure for themselves the compensation from the Veterans' Bureau.

The testimony of N. K. Counts on this phase of the matter is very candid. He frankly states that he and his son are defraying the expense of the suit; that it was brought at his instigation and, in effect, that his move in the matter was influenced by the effort of the appellant to share in the compensation, which stopped the payments to himself and his wife. In our view we cannot be concerned with the motives of the parties, whatever they were. We are confronted with the absolute terms of solemn statutes which we have no right to disregard or abrogate.

The statutes referred to are: Section 5088, Code of 1930: "All marriages which are prohibited by law on account of consanguinity or affinity between the parties, and all marriages solemnized when either of the parties was insane, or incapable from physical causes of entering into the marriage state, shall, if solemnized within this State, be void from the time they shall be so declared by a decree of divorce or nullity, or from the time of the conviction of the parties under section forty-five hundred and forty."

Section 5100, Code of 1930: "When a marriage is supposed to be void for any of the causes mentioned either in section five thousand and eighty-seven, five thousand and eighty-eight, five thousand and eighty-nine or five thousand and ninety, either party may, except as is provided in the next section, institute a suit for annulling the same; and, upon due proof of the nullity of the marriage, it shall be decreed to be void by a decree of divorce or nullity."

The large question is whether Jessee Counts was insane at the time the marriage was solemnized between himself and the appellant. The trial court, upon the evidence, held the marriage null and void. We cannot say that it erred. We think the evidence justifies the decree.

It is urged that the appellant is an innocent party; that she thought the man was sane and capable of contracting; that there was issue born of the wedlock and

that an annulment of the marriage would be baneful in the extreme in its effect. The reply is that the law cannot be made or remade to fit hard cases. As to the innocence of the appellant or her alleged ignorance of the mental condition of the man she married, A. A. Hartly, a witness introduced by her, after testifying, on cross-examination, that it was currently reported in the neighborhood that Jessee Counts was being treated in the asylum for mental trouble, and that he had escaped, was asked this question:

"Q. Didn't Lillian Lambert have as good opportunity and even better than yourself to know of the rumors prior to her marriage to Jessee Counts, of Jessee Counts coming directly from the asylum or Davis Clinic where he was being treated for mind trouble before her marriage to him?

"A. Sure she did."

■ Coming now to the question of the authority or right of E. V. Counts, committee of Jessee Counts, to institute a suit to annul the marriage herein involved, it is said in Bishop on Marriage, Divorce and Separation, volume II (6th Ed.), section 527: "If an insane person is entrapped into a form of ceremony of marriage, reason would indicate that his guardian or committee should be permitted during the continuance of the insanity to institute and carry on a proceeding to have it declared void. And so the law is believed to be, not absolutely without qualifications, both with us and in England."

*Id.,* section 528: "The insane person, whether plaintiff or defendant, cannot appear in these judicial proceedings alone and unprotected; he must sue or defend by guardian, guardian *ad litem,* or committee. Precisely how this shall be will depend largely on the varying statutes of our States, and on the practice of the particular court."

■ In the case of *Sheltman* v. *Taylor's Committee,* 116 Va. 762, 82 S. E. 698, the syllabus is as follows: "It is the established general rule that when there is a committee of a lunatic every suit respecting his person or estate must be brought by or against his committee, and in determin-

ing the right to sue out an attachment on the ground of the non-residence of the defendant, the residence of the committee and not that of the lunatic governs."

*Bird's Committee* v. *Bird,* 21 Gratt. (62 Va.) 712, was a case in which the bill was filed in the name of a person of unsound mind, suing by her next friend, against her former committee for the settlement of the accounts of the latter. Objection was there made to the form of the suit upon the ground that a lunatic is incompetent to maintain an action, except through the intervention of a committee. The objection, for other reasons, was not sustained, but in the course of the opinion it was said: "It is clear when there is a committee, that every suit respecting the person or estate of the lunatic must be instituted in his name."

See, also, *Cole's Committee* v. *Cole's Adm'r,* 28 Gratt. (69 Va.) 365, in which objection was made to the bill because it was in the name of "M. W. Cole, who, being a person of unsound mind, sues by his next friend and committee, Paul V. Adams." The court said that this was substantially a suit by the committee in the name of the lunatic. And further, "The objection is certainly of the most technical character, and if there was any defect in the form of the bill, the objection should have been made in the circuit court, where, by amendment, the error, if any, might have been corrected."

■ Section 5100 of the Code quoted above provides that when a marriage is supposed to be void, for the reason which we are considering, *either party may* institute a suit for annulment of the marriage. Certainly a person who has been adjudged insane and is still *non compos mentis* cannot himself institute a suit. How, then, can he sue except by and through some legally constituted representative? If this were not so the terms of the statute and the right given by it would be nugatory and inoperative. A lunatic, in such case, would be without redress in Virginia.

We think that the objection to the form of the bill or the suit is without merit.

■ It is contended that the committee in the case in judgment was not legally appointed. The following order was entered by the Circuit Court of the county of Dickenson on the 11th day of October, 1928: "Upon motion E. V. Counts was appointed committee for Jessee Counts, who has been committed to the asylum for the insane, and thereupon came E. V. Counts, together with Basil Edwards, his surety therein, and acknowledged the bond in the penalty of $750.00 conditioned according to law, and took and subscribed the oath prescribed by law."

We think this is conclusive that the committee was legally constituted as such.

In the case of *Jackson* v. *Counts*, 106 Va. 7, 54 S. E. 870, 871, where a similar objection was made to that urged here, it was said: "We do not feel called on to discuss the various questions raised upon this assignment, for, in our view, if the invalidity of the appointment of Counts and Anderson as committees were conceded, it would in no way affect their right to prosecute these suits. The court would simply treat them as next friends of the persons under disability, whom they have undertaken to represent, and permit the suits to proceed.

" 'Suits on behalf of a lunatic are usually instituted in the name of the lunatic, but as he is a person incapable in law of taking any step on his own account, he sues by the committee of his estate, if any, or if none, by his next friend.' (1 Dan. Chy. Pr. 83.)

" 'Persons of full age, but who are incapable of acting for themselves, though neither idiot nor lunatic, have been permitted to sue by their next friend. * * *' *Id.* 86, *Bird's Committee* v. *Bird,* 21 Gratt. [62 Va.] 712; *Cole's Committee* v. *Cole's Adm'r,* 28 Gratt. [69 Va.] 365; *Hinton* v. *Bland's Adm'r,* 81 Va. 591. * * *

"The authorities illustrate the disposition of courts to regard convenience and substance rather than form in mere matters of procedure; and it appearing in this instance that the interests of the real plaintiffs, who by reason of mental incapacity are unable to protect themselves,

have been fairly and diligently represented by persons irregularly appointed as committees, and that the rights of the defendants have in no respect been prejudiced by the irregularity complained of, their objection was rightly overruled by the trial court."

█ The contention is also made that Jessee Counts was never legally adjudged to be an insane person. This is addressed to the fact that there was never, as to him, a finding of a commission of lunacy. We think the evidence in the case presents a sufficient answer to this contention. There can be no doubt of the interest of the army authorities in the welfare of a soldier with a creditable record as was the case here. It was at their instigation and by their orders that he was placed in three different asylums for mental examination and treatment. This and the evidence of Dr. Wright shows that Jessee Counts was in fact insane. This contention is without merit.

█ The remaining contention of the appellant which we think needs to be noticed is that the suit, or right of action, if any, is barred by laches.

In support of this it is said that the Rev. J. Walker Counts, the officiating minister, was dead when the suit was instituted, and therefore his testimony, whatever it might have been, was not to be had. In truth he died about a year after the marriage. To have obtained his testimony the suit must have been instituted within the year referred to.

█ "Laches implies knowledge or means of knowing one's rights, depending upon the particular fact of each case, and therefore cannot be imputed to one of unsound mind." Michie's Digest of Virginia and West Virginia Reports, volume VI, page 614, section 16; *Trowbridge* v. *Stone's Adm'r*, 42 W. Va. 454, 26 S. E. 363; *Knight* v. *Watts' Adm'rs*, 26 W. Va. 175.

█ Counsel for the appellant urges that the suit for the annulment of the marriage does not affect the person or property of Jessee Counts, but only his social status,

and that, therefore, no one but the person so affected could institute and maintain the suit. What we have already said as to the effect of the provisions of the statutes quoted disposes of this contention. Unquestionably the suit affects both the person and the property of the insane man—his person, in that it liberates him from bondage apparently real but which never legally existed; his property, or a portion of his compensation, which might be taken by one not legally entitled thereto, under the guise of a marriage which was void.

If the subtle distinctions and refinements of argument of appellant's counsel were effected, a legal anomaly would ensue.

The decree of the trial court is plainly right and we affirm the same.

*Affirmed.*