# Wythebille

ANNIE INEZ WILLIAMSON V. WALTER E. JOHNSON, COMMITTEE, ETC.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*N. T. Green* and *R. E. Spandorfer,* for the appellant.

*L. Preston Collins* and *Vivian L. Page,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is a chancery suit instituted by Walter E. Johnson, as committee of George Edward Williamson, *non compos*

*mentis,* against Annie Inez Williamson, to annul the marriage solemnized at Elizabeth City, North Carolina, on July 10, 1933, between the said George Edward Williamson and Annie Inez Williamson, both domiciled in Virginia, on the ground that the husband was insane at the time of the marriage.

If Williamson was insane on July 10, 1933, the marriage was forbidden both in Virginia (Code, section 5088) and in North Carolina. North Carolina Code 1931, section 2495; *Sims* v. *Sims,* 121 N. C. 297, 28 S. E. 407, 408, 40 L. R. A. 737, 61 Am. St. Rep. 665; *Watters* v. *Watters,* 168 N. C. 411, 84 S. E. 703, 704. Therefore, it is conceded that the only question involved was whether Williamson possessed sufficient mental capacity to enter into the marriage.

The lower court, after an *ore tenus* hearing of the evidence, found and decreed that Williamson was insane at the time of the marriage, and declared the union null and void from the date of the entry of the decree. This appeal brings under review the correctness of that finding and decree.

In 1917 Williamson, then twenty-one years of age, enlisted in the United States army for service in the World War. On the night before his ship landed at Brest, in the spring of 1918, he gave evidences of a decided mental disturbance and was promptly returned to the United States. After preliminary treatment for mental trouble at Fort Porter, New York, he was discharged from the army, and on July 31, 1918, sent to the Eastern State Hospital at Williamsburg, Virginia, where his trouble was diagnosed as dementia praecox with an unfavorable prognosis.

On October 4, 1921, he was transferred to the Davis clinic, a unit for the care of nervous and mentally affected World War veterans at the Southwestern State Hospital, at Marion, Virginia. There, as the result of examinations made in 1921, 1923 and 1926 by the staff physicians, the previous diagnosis of dementia praecox with an unfavorable outlook was confirmed. In the spring of 1925 he escaped from the hospital, was arrested in Florida about a

year later, and voluntarily returned to the clinic on May 18, 1926.

On August 25, 1927, Walter E. Johnson was appointed committee of Williamson by an order entered in the Circuit Court of Smyth county. On April 2, 1930, his condition was so improved that he was furloughed from the hospital and allowed to go to Portsmouth to visit his sister, with whom he remained and resided until he was recommitted to the hospital on August 14, 1933, under a lunacy commission held in the city of Norfolk. In the meantime, on May 27, 1932, he was discharged from the hospital due to his absence therefrom for a period of more than ninety days. However, this did not affect his status with the Veterans' Bureau, by which he had been, and is now, rated as permanently and totally disabled due to mental incompetency.

While living in Portsmouth complaint was made that he was guilty of indecent exposure on numerous occasions, one of which resulted in his arrest and punishment. Frequently, on other occasions during the period under review, he gave evidences of the same trait.

Such was his background when the marriage, which is the subject of this litigation, was solemnized at Elizabeth City, North Carolina, on July 10, 1933. The parties immediately returned to Norfolk where they continued to reside as man and wife until Williamson was recommitted to the hospital on August 14, 1933. This suit to annul the marriage was instituted on September 29, 1933.

In order to sustain the charge of mental incompetency, the committee offered in evidence the reports of examinations by Dr. G. W. Brown, superintendent of the Eastern State Hospital at Williamsburg, dated December 2, 1920, Dr. E. H. Henderson, assistant superintendent of Davis Clinic at Marion, dated October 19 and November 27, 1921, respectively, and the joint report signed by Doctors Gray, McCarty and Henderson of the Davis Clinic, dated August 28, 1926. All of these reports show that Williamson was suffering from dementia praecox with an unfavorable outlook.

In addition to this documentary evidence, the committee called as witnesses Dr. George A. Wright, superintendent of the Southwestern State Hospital at Marion, Dr. W. H. McCarty, an assistant physician at the Southwestern State Hospital, and Dr. C. T. Wilfong, chief medical officer for the Veterans' Bureau at Richmond. Each of these physicians testified that after having observed and examined Williamson over a period of years, he was of the opinion that Williamson was suffering from dementia praecox, and that this is generally regarded as a chronic, progressive and incurable mental disease.

Dr. Wright testified that he had been connected with the Southwestern State Hospital for a period of ten years, having been superintendent for six years. It was his definite opinion that at the time of his marriage Williamson was suffering from dementia praecox, simple type; that this is a definite form of insanity, and that "there is little or no probability of any improvement or restoration of his mental health." He was further of the opinion that Williamson was not competent to transact business or handle his affairs, and was not in such mental condition at the time of his marriage as to appreciate the consequences of his act.

Dr. McCarty testified that, basing his opinion on Williamson's actions, behavior and history, it was his judgment that Williamson was suffering from dementia praecox, was incapable of administering and handling his affairs, was unable to appreciate the consequences of his acts, and was insane on the date of his marriage.

Dr. Wilfong testified that at the time of Williamson's marriage he was rated by the Veterans' Bureau as being "permanently and totally disabled, insane and incompetent, on diagnosis of dementia praecox," which was in accord with his own personal opinion.

These physicians further testified, on cross-examination, that while they believed Williamson knew that he was getting married, that fact did not alter their opinions that he was unable to appreciate the consequences of his act.

To refute the committee's claim of Williamson's insanity

at the date of the marriage, the defendant's only medical witness was Dr. Redwood, of Norfolk, a specialist in nervous diseases. Basing his opinion, as he stated, entirely on his observation of Williamson while the latter was testifying in the court below, Dr. Redwood said: "I can't see anything that will make me say he had any mental condition at all." In other words, Williamson appeared to this witness to be sane. However, Dr. Redwood agreed with the committee's witnesses that dementia praecox is an incurable form of insanity, often very difficult to diagnose.

The defendant also offered as witnesses five laymen who testified that Williamson was not insane.

In connection with the testimony of Williamson, who was offered as a witness for the defense, the petition states: "We submit that an attentive perusal of that testimony will show that Williamson is not only sane, but a man of more than the average mentality. *We rely on it entirely for a reversal of this case* and we cannot emphasize too strongly the desire on our part that the court shall read his testimony in full."

We have read and carefully considered this testimony. Undoubtedly it is the strongest evidence in the record in favor of Williamson's sanity. He was able to give a clear statement of his history during the period of his life under discussion. Furthermore, he stated that he knew he was getting married, appreciated the consequences of his act, and did not want his marriage annulled. However, we cannot agree with the learned counsel for the petitioner that the trial court should have taken this testimony of Williamson himself as conclusive proof of his sanity. The record here shows that this man was confined in various insane asylums for a period of twelve years, during which time seven trained specialists, interested only in his welfare, found that he was suffering from dementia praecox, a chronic, progressive and incurable mental disease. At the date of his marriage he was rated by the United States Veterans' Bureau as permanently and totally disabled on account of mental incompetency.

The testimony was heard in open court before an able trial judge of long and wide experience who had the opportunity of observing Williamson's manner of testifying, his demeanor and what he said, and we cannot say, as a matter of law, that he reached the wrong conclusion. This is especially true in the light of the testimony of Dr. Wright, who stated that in Williamson's type of insanity "superficial appearances would be very misleading," and that it was exceedingly difficult for the average layman to determine that a person is suffering from dementia praecox. Furthermore, it is a matter of common knowledge that persons known to be insane are often able to discourse intelligently and at length on a variety of subjects, and are frequently able to conceal their true condition from the average layman, and at times even from trained specialists.

The decree appealed from, upon a conflict of the evidence heard in open court, has the same weight as the verdict of a jury. *Howren* v. *Howren, ante,* page 141, 178 S. E. 678, 679; *Hartman* v. *Melfa Banking Co.,* 162 Va. 433, 436, 174 S. E. 653. It is binding on us unless it is "plainly wrong or without evidence to support it." Code, section 6363; *Amos* v. *Franklin,* 159 Va. 19, 22, 165 S. E. 510. Certainly it cannot be said that the decree is without evidence to support it, and, indeed, our conclusion is that the preponderance of the evidence is in favor of the finding.

The facts here are almost identical with those in *Counts* v. *Counts,* 161 Va. 768, 172 S. E. 248, 249. In that case this court upheld the decree of the lower court annulling a marriage on the ground of the insanity of the husband at the time the ceremony was solemnized. Counts also was a World War veteran who had been confined in the Davis Clinic at Marion several years, where his trouble was diagnosed as dementia praecox. While on a furlough he married Lillian Lambert. The evidence as to Counts' mental capacity at the time of his marriage, and prior thereto, was conflicting, but the lower court held him to be incompetent largely on the testimony of Dr. George A. Wright, superintendent of the Southwestern State Hospital at

Marion. As in the case at bar, the wife contended that the annulment proceedings had been instigated by the husband's relatives with the ulterior motive that they, and not she, might inherit his estate. Justice Browning disposed of that contention by aptly saying, 161 Va. 768, at page 774, 172 S. E. 248, 249: "In our view we cannot be concerned with the motives of the parties, whatever they were. We are confronted with the absolute terms of solemn statutes which we have no right to disregard or abrogate."

It is not necessary for us to decide whether the appointment of the committee for Williamson, by the order of the Circuit Court of Smyth county in 1927, was a legal adjudication of his insanity, since there was sufficient evidence to sustain the finding of the lower court that he was, in fact, insane at the time of the marriage. *Counts* v. *Counts,* 161 Va. 768, 778, 172 S. E. 248.

■ It is our opinion that the decree of the trial court is amply supported by the evidence, and the same is accordingly affirmed.

*Affirmed.*