## MOTT *v.* UNITED STATES.

No. 78. Argued December 2, 1930.—Decided June 1, 1931.

*Mr. Charles B. Rogers* for petitioner.

*Solicitor General Thacher, Assistant Attorney General Richardson,* and *Messrs. Nat M. Lacy* and *Paul D. Miller* were on the brief for the United States.

*Messrs. John W. Davis, Hugh H. O'Bear, Carroll G. Walter, Rayburn L. Foster,* and *Almond D. Cochran,* by special leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit brought by the United States on behalf of Jackson Barnett, a full-blood Creek Indian, to recover certain United States bonds, charged to have been wrongly diverted from a trust fund held for him, or their proceeds or value if they have been converted.

A second amended bill of complaint was tendered for filing, to which the defendant objected on the ground that it did not state a cause of action. The court, treating the objection as if it were a motion to dismiss the tendered complaint after filing, held that no cause of action was stated and dismissed the suit.[1] On appeal the Circuit Court of Appeals held that a cause of action was adequately stated and reversed the decree with directions to permit the complaint to be filed.[2] Certiorari was then granted by this Court.

The suit arises out of the same transactions that were the basis of the litigation described in *United States* v. *Equitable Trust Co., ante,* p. 738.

The case stated in the tendered complaint is as follows. Barnett received an allotment from the lands of

---

[1] 33 F. (2d) 340.    [2] 37 F. (2d) 860.

the Creek tribe. His title was in fee simple, but by reason of his being a full-blood Creek was subject to restrictions against alienation and leasing, except with the approval of the Secretary of the Interior.[3] Besides being under that disability, he was and still is by reason of mental infirmity incapable of managing his own affairs, comprehending the nature or extent of his property or understanding any kind of business transaction. Because of his mental infirmity he was adjudged an incompetent and subjected to guardianship by the probate court of the county of his residence in Oklahoma.

Apart from the approval of the lease about to be mentioned, the restrictions incident to his status as a full-blood Creek have never been removed or qualified.

In 1912 Barnett, with his guardian joining therein, executed a lease of his land for oil and gas purposes, the lease being approved by both the probate court and the Secretary of the Interior. The lease and the Secretary's regulations, which were made part of the lease, required that the royalties be paid to a local representative of the Secretary in trust for Barnett and disbursed only with the Secretary's sanction. In time the royalties yielded a large fund, which the Secretary invested for Barnett's benefit in United States bonds.

In February, 1923, the Secretary, at Barnett's request, distributed the larger part of the bonds in gifts. One gift was to Barnett's purported wife and included $550,-000 of the bonds. His request that the gifts be made was in the form of a written instrument on which he placed a thumb mark signature—he being then incapable, by reason of his mental infirmity, of comprehending or understanding the nature, import or effect of the instru-

---

[3] Acts March 1, 1901, c. 676, 31 Stat. 861; June 30, 1902, c. 1323, 32 Stat. 500; May 27, 1908, c. 199, 35 Stat. 312. And see Act May 10, 1928, c. 517, 45 Stat. 495.

ment. The Secretary approved the request by an endorsement on the instrument and then transferred the bonds to the designated donees.

The wife immediately delivered $150,000 of the bonds to one McGugin, and he thereupon passed $15,000 of them to the defendant, Marshall L. Mott. Both McGugin and Mott at the time had full knowledge that the wife received the bonds as a gift out of Barnett's trust fund, that that fund represented royalties from the oil and gas lease of his restricted land, and that by reason of mental infirmity he was without capacity to initiate or make a gift or disposal of the bonds.

Mott has refused and still refuses to return the bonds so received by him to the United States or to account for their proceeds or value.

The prayer of the complaint is that Mott be required to surrender into court the bonds, or their proceeds or value if they have been converted, to the end that they may be restored to the fund from which they were diverted and there held for Barnett's use and benefit.

We are of opinion that the facts thus shown are such as to entitle the United States to the equitable relief which it seeks. Its right to sue in behalf of an Indian ward for the purpose of asserting and enforcing his interest in property diverted from a trust fund while being administered by the Government's officers is obvious. Barnett is such a ward, for he is a full-blood Creek Indian who has not been relieved from the restrictions we have described. The approval by the Secretary of the Interior of the oil and gas lease did not terminate them. It made the lease effective, but otherwise left the restrictions in full force. Besides, it subjected the royalties to restrictions similar to those applying to the leased land from which the royalties would come. This was accomplished by a provision in the lease whereby, agreeably to the

Secretary's regulations, the royalties were to be paid to a representative of the Secretary in trust for Barnett and disbursed only with the Secretary's sanction. The authority of the Secretary to withhold his approval includes the lesser authority to give his approval upon condition that the royalties be thus conserved and protected.[4]

But while the Secretary is authorized to prevent improvident alienation or leasing by restricted Creek allottees, he is not authorized to alien or lease in their stead and right. This is plainly the effect of the statutory provisions which we quote in the margin.[5] If an allottee chooses to alien or lease, the Secretary, if not satisfied that the transaction will be of benefit to the Indian, can prevent it by not approving it. But, if the allottee chooses not to alien or lease, the Secretary cannot do so for him, even though it appears that the Indian would be benefited. And of course the Secretary cannot merely

---

[4] *Sunderland* v. *United States*, 266 U. S. 226, 235; *Starr* v. *Campbell*, 208 U. S. 527, 533; *United States* v. *Thurston County*, 143 Fed. 287, 291; *National Bank of Commerce* v. *Anderson*, 147 Fed. 87, 90.

[5] The Act of May 27, 1908, c. 199, 35 Stat. 312, provides:

"Sec. 1. . . . That . . . all allotted lands of enrolled full-bloods . . . shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance . . . except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. . . .

"Sec. 2. That all lands other than homesteads . . . from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: *Provided,* That leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

of his own volition make gifts or donations of the Indian's restricted land.

Like principles apply to restricted funds such as that arising from Barnett's royalties. That fund was his individual property and as such was within the protective guaranties of the Constitution.[6] No statute purported to give any authority for taking it from him. Nor was there anything in the Secretary's regulations indicative of an assumption of such authority. On the contrary, they contemplated that such funds would be held, conserved and protected for the benefit of their Indian owners.

We need not inquire, as the Circuit Court of Appeals appears to have done, whether, had Barnett been mentally competent, the gifts named in his purported request could have been made from his trust fund. That is not this case. Barnett, according to the complaint, was mentally incompetent to a degree which made him wholly incapable of understanding, intending or making such a request. Therefore the instrument, although bearing his thumb mark, was not his act and could not bind him. With it eliminated, the gift in question stood as if made by the Secretary merely on his own volition. This was beyond his authority.

The suggestion that his approval supplied the necessary intent on the part of Barnett is but another way of saying that the Secretary could make the gift merely of his own volition. The further suggestion that he must be presumed to have found Barnett free from disability and that this determination cannot be questioned in the courts is without merit. If good as to a mental incompetent, it would be good as to an Indian under age or

---

[6] *Choate* v. *Trapp*, 224 U. S. 665, 677. And see *Lane* v. *Pueblo of Santa Rosa*, 249 U. S. 110, 113.

even an infant. The suggestion has been disapproved by the Circuit Court of Appeals for the Eighth Circuit.[7]

*Decree affirmed.*

MR. JUSTICE STONE did not participate in the consideration or decision of this case.

---

[7] *Jennings* v. *Wood,* 192 Fed. 507.