**BARNETT et al. v. UNITED STATES.**

No. 7962.

Circuit Court of Appeals, Ninth Circuit.

March 23, 1936.

Paul R. Hutchinson, of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Howell Purdue, Asst. U. S. Atty., both of Los Angeles, Cal.

Marion De Vries, of Washington, D. C. (Jesse P. Crawford and H. Kennedy McCook, both of Washington, D. C., of counsel), amici curiæ.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a decree in equity in an action brought by the United States to recover from Anna Laura Barnett and the other defendants, who have not appealed, such portion of the sum of $550,000 as was given to her by the Secretary of the Interior from funds of an Indian derived from royalties from an oil lease on real estate allotted to the Indian in the state of Oklahoma.

The appellants filed eleven assignments of error. The first was that the court erred in denying the motion of defendant Anna Laura Barnett to dismiss the amended bill of complaint. The third was that the court erred in overruling the objection of the defendants Anna Laura Barnett and Maxine Sturges by their counsel to the introduction of any evidence in said case. The sixth, that the trial court had no jurisdiction over this action or its subject-matter and erred in assuming and maintaining the same.

The appellants have prepared an agreed statement on appeal purporting to be in accordance with Equity Rule 77 (28 U.S.C.A. following section 723), which permits a statement of the cause "showing how the questions arose and were decided in the district court and setting forth so much only of the facts alleged and proved, or sought to be proved, as is essential to a decision of such questions by the appellate court."

This agreed statement is in the form of a stipulation approved by the trial judge. Among other things it states:

"It is hereby stipulated that no statement of evidence or bill of exceptions need be filed herein, and that the appeal of said case be heard on the judgment roll and upon this Agreed Statement on Appeal.

"* * * It is hereby stipulated that all orders and rulings herein mentioned and made to motions herein mentioned and the decision of the court thereon were and are duly excepted to by appellants; * * * that the motions of the defendants and appellants Anna Laura Barnett and Maxine Sturges to dismiss and to strike from plain-

tiff's bill of complaint applied to the original petition, its amendment, and the amended bill of complaint."

It is also stipulated that at the beginning of the trial the defendants and appellants objected to the introduction of any evidence on the ground that the plaintiff and appellee had no legal capacity to sue and that said objection was overruled by the court.

It was further stipulated that certain questions, fifteen in number, are presented to be passed upon in this appeal.

In so far as the stipulation purported to state certain propositions of law to be decided by this court upon appeal, it departs from rule 77 and must be disregarded. The parties have no right to determine by stipulation the questions to be decided on appeal. The purpose of rule 77 is to permit a succinct statement of the record so as to show how the questions to be submitted to the appellate court arose and were decided in the District Court.

Under the head of "Specification of Errors" in appellants' brief we find the following statement:

"The assignment of errors lists 11 assigned errors. After it was filed, counsel for appellants and for respondent stipulated that the appeal be prosecuted on the judgment roll and certain questions specially presented by the stipulation. In briefing appellants' cause it has been found helpful to combine some of those points. All of them are defects appearing on the face of the record. They were first presented by defendants' motion to dismiss, at the trial by defendants' objection to the introduction of any evidence, and at the close of plaintiff's case by the motion to strike all evidence, and for judgment for defendants. Now they arise naturally in an appeal on the judgment roll, except where otherwise noted. Appellants contend that the court committed error in denying said motions and that the decree is fatally defective, in the following particulars:

"I. The United States is without guardianship power or legal right to sue as plaintiff to nullify the marriage of Jackson Barnett. * * *

"II. The attempt on the part of the United States to interfere with the marriage of the Barnetts is an unconstitutional interference with their rights as citizens. * * *

"III. Assuming that the United States had the guardianship power or legal right to maintain an action to nullify the marriage, the United States District Court had no jurisdiction over the action pertaining to the marriage or the power to decree the marriage a nullity. * * *

"IV. Assuming that the United States had the guardianship power and the legal right to maintain the action to nullify the marriage, and the District Court jurisdiction over such an action, they both fall short of the power to annul the marriage, and the marriage is therefore valid.

"V. Assuming that the United States had the guardianship power and legal right to sue to nullify the marriage and the United States District Court jurisdiction over such an action, relief should be refused because of laches, and plaintiff should be estopped to maintain the action to nullify the marriage. * * *

"VI. The amended bill of complaint contains a misjoinder and multiplicity of causes of action, and violates Equity Rule 26 [28 U.S.C.A. following section 723] * *

"VIII. The amended bill of complaint is fatally defective in that there is a nonjoinder of necessary parties defendant. * * *

"X. The plaintiff did not have the right to sue to recover property previously held as restricted for the benefit of Jackson Barnett, which was released from such restriction by the Secretary of the Interior in the exercise of his discretion."

These specifications are scattered through 108 pages of appellants' brief. Each specification of error in the brief should state the particular ruling claimed to be erroneous and the assignment or assignments of error upon which the specification is based. The specifications in the appellants' brief are defective, in that they do not refer at all to the assignments of error upon which they are predicated and lump together a number of rulings which are claimed to be erroneous without designating which particular ruling is complained of.

If the only difficulty in considering the appeal arose from defective specifications of error in appellants' brief because of their failure to conform to the rules of this court, we would afford an opportunity to the appellants to file a new brief with the proper specifications. But, in view of the fact that under the statement on appeal we have nothing properly before us but the question as to whether or not the

bill of complaint states a cause of action and as to whether or not the decree rendered was within the jurisdiction of the court, we will proceed to a determination of those matters without calling for a new brief on the part of the appellants. In so doing we shall assume that it was the intention of the appellants by the above specifications to specify the alleged error of the trial court in denying their motion to dismiss upon the ground that the bill did not state a cause of action on behalf of the United States and to the alleged excess of jurisdiction in the remedy granted.

Aside from the description of the real estate contained in the complaint, which had been purchased by or on behalf of the appellant Anna Laura Barnett from said fund of $550,000, the facts alleged in the bill of complaint herein can be ascertained by reference to a number of decisions heretofore rendered which recite the circumstances under which $1,100,000, including the $550,000-herein involved, was procured from the Secretary of the Interior from the funds of Jackson Barnett by fraud. This renders it unnecessary to make an elaborate statement of the same facts in this opinion. Therefore, to avoid a more detailed statement of facts involved in the case at bar, we refer to such cases. Barnett v. Equitable Trust Co. of New York (D.C.) 21 F.(2d) 325, 333; Id. (C.C.A.) 34 F.(2d) 916; United States v. Equitable Trust Co. of New York, 283 U.S. 738, 739, 51 S.Ct. 639, 75 L.Ed. 1379; United States v. Mott (D.C.) 33 F.(2d) 340; Id. (C.C.A.) 37 F. (2d) 860; Mott v. United States, 283 U.S. 747, 51 S.Ct. 642, 75 L.Ed. 1385. These cases hold that the fund of $1,100,000 belonging to Jackson Barnett was obtained from the Secretary of the Interior, its lawful custodian, while Jackson Barnett was incompetent to draw upon the fund or to contract matrimony, by means of an order obtained by the appellant Anna Laura Barnett, who had kidnapped Barnett, taken him to Kansas, and then to Missouri, in each of which states a purported marriage ceremony was staged. A portion of this $1,100,000 is wrongfully in the custody of the appellant and in the other defendants.

According to allegations and findings in the case at bar, Jackson Barnett was wholly incapable of understanding the nature of a marriage contract or of the obligations thereby assumed. He did not have sufficient mental capacity to marry. After this purported marriage, Jackson Barnett was induced to make a thumbprint upon the order for the release of the $1,100,000 above referred to. This act was without comprehension on his part of the significance of it or any knowledge of the contents of the document to which he attached his thumbprint, and without any capacity to understand such an instrument. These facts were alleged and proved, and the record is conclusive against the appellants upon that subject.

Appellants contend this action cannot be maintained by the United States on behalf of the Indian, Jackson Barnett. The decisions to which we have already referred, dealing with this very transaction, establish the error of this contention, for it is held in these cases that the United States is the proper party to act for recovery of the funds in question.

In so far, then, as the action at bar is an action by the United States on behalf of Jackson Barnett to recover a portion of the $1,100,000 fund secured from the Secretary of the Interior by fraud, the right to maintain the action is established beyond controversy by the hereinbefore mentioned decisions dealing with this same transaction.

The bill of complaint herein, in addition to the recovery of the land and property above mentioned, prayed for a decree of the court that the alleged marriage between Jackson Barnett and the appellant Anna Laura Barnett was wholly void, and the court so decreed.

The appellants claim that the lower court had no jurisdiction to declare the marriage void because jurisdiction of such matters is vested in state courts and not in federal courts. The appellee predicates jurisdiction upon the original cause of action to recover the trust fund, and claims that the adjudication declaring the marriage void is a corollary thereto because it is the duty of the United States to administer the funds already recovered, those to be recovered, and the other income derived from the oil property of Jackson Barnett and to distribute such property upon his death to his widow, if any, or, if not, to retain the property for the benefit of his Indian heirs. It is therefore essential that the United States shall have the marital status of the Indian determined in order to properly perform its duty as trustee of the fund and as guardian of the Indian heirs of Jackson Barnett, for there are no children of the alleged marriage and Jackson Barnett had no descendants. His nearest relatives,

according to the allegation of the complaint and finding of the trial court, were nieces and nephews who were all full-blooded Indians. It has been held that a declaration of the invalidity of a marriage may be a proper subject for adjudication in an action brought by a guardian of the property of one of the alleged spouses as an incident to the management of the estate. The Supreme Court of Ohio in Waymire v. Jetmore and Spencer, 22 OhioSt. 271, where a guardian brought an action to have a marriage of his ward declared void because of mental incapacity, said:

"Social order and public decency demand that the parties to a meretricious relation, in which the forms of marriage, apparently legal, seem to bind them, should be judicially relieved therefrom. This alone is sufficient cause for the interference of whatever tribunal possesses the adequate powers. But the succession of property and the legitimacy of inheritance, which the law regards with peculiar jealousy, furnish a no less controlling motive for such interference. The want of consenting capacity, resulting from causes other than infancy, which is generally declared and the period thereof fixed by statute, is determinable in every instance by the testimony of witnesses only. Therefore, while the parties are in esse, and the witnesses accessible, it is of the greatest importance that every cloud which might obscure the succession or involve the inheritance, should be removed, rather than remain to foster future and consuming litigation. To this end a court of equity, in the exercise of its ordinary powers, will entertain jurisdiction, at the suit of the imbecile's guardian, to declare his marriage a nullity, as it does to order the surrender and cancellation of a forged or otherwise void instrument."

In Counts v. Counts, 161 Va. 768, 172 S. E. 248, decided January, 1934, the Supreme Court of Appeals of Virginia had under consideration a suit in chancery to annul the marriage of Jessee Counts to Lillian Counts on the ground of the insanity of Jessee Counts at the time of the marriage. The suit was instituted by E. V. Counts, committee for Jessee Counts. The defendant contested the right of the committee of an insane person to bring such a suit. Section 5088, Code Virginia 1930, provides that "all marriages * * * solemnized when either of the parties was insane * * * shall, if solemnized within this State, be void from the time they shall be so de-

clared by a decree of divorce or nullity." Section 5100 of that Code provides that, "when a marriage is supposed to be void for any of the causes mentioned either in section * * * five thousand and eighty-eight, * * * either party may, except as is provided in the next section, institute a suit for annulling the same; and, upon due proof of the nullity of the marriage, it shall be decreed to be void." Under these statutes it was held that the committee had the right to institute a suit to annul the marriage. The court quoted and approved Bishop on Marriage, Divorce and Separation, vol. 2 (6th Ed.) §§ 527, 528, as follows:

Section 527: "If an insane person is entrapped into a form of ceremony of marriage, reason would indicate that his guardian or committee should be permitted during the continuance of the insanity to institute and carry on a proceeding to have it declared void. And so the law is believed to be, not absolutely without qualifications, both with us and in England."

Section 528: "The insane person, whether plaintiff or defendant, * * * must sue or defend by guardian ad litem, or committee. Precisely how this shall be will depend largely on the varying statutes of our states, and on the practice of the particular court."

From the decisions it is clear that a declaration of the nullity of a marriage, void because of the incapacity of the ward, is appropriate in an action by the guardian of the ward's estate, and in a proper case is ancillary to the administration of the estate. We think it clear that the remedy sought by the government herein was ancillary to the main purpose of this action.

Appellants contend, however, that the District Court had no jurisdiction over a suit to annul a marriage, citing Barber v. Barber, 21 How. (62 U.S.) 582, 16 L.Ed. 226; In re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500; Simms v. Simms, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115; Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1; De La Rama v. De La Rama, 201 U.S. 303, 26 S. Ct. 485, 50 L.Ed. 765. Appellants particularly rely upon Barber v. Barber, supra, wherein the Supreme Court disclaimed any federal jurisdiction upon the subject of divorce. This is not a suit to annul a marriage. Federal jurisdiction is predicated upon the Constitution of the United States

(article 3, § 2), which provides that the judicial power of the United States shall extend "to controversies to which the United States shall be a Party." It is difficult to escape the conclusion that this is a controversy to which the United States is a party, and, consequently, that the federal courts have jurisdiction thereof. U.S.Const., art. 3, § 2. The jurisdiction of a court of equity to entertain such a suit is affirmed in Sharon v. Hill (C.C.) 20 F. 1; Id. (C.C.) 22 F. 28; Id. (C.C.) 26 F. 337; Sharon v. Terry (C.C.) 36 F. 337, 1 L.R.A. 572, where the purpose of the action was to prevent the defendant from using a forged marriage contract as evidence of an alleged marriage. One of the purposes of the suit is to prevent the use of the fraudulent and void marriage certificate and ceremony as evidence in future dealings between the United States and the appellant Anna Laura Barnett. It follows that this suit is an action in equity within the meaning of the Judicial Code § 24 (28 U.S.C.A. § 41), giving jurisdiction to the District Court. It follows that the trial court had jurisdiction to enjoin the use of such evidence, as it did.

Here it may be appropriately added that, before the formal decree was filed, Jackson Barnett died, and the court entered a nunc pro tunc decree as of the date of the announcement of the decision, which was in writing and signed by the judge. This was proper. See annotations to In re Estate of Cook (Cal.) 1 L.R.A. 567; Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Majestic Elec. Dev. Co. v. Westinghouse Elec. & Mfg. Co. (C.C.A.) 276 F. 676.

Decree affirmed.