## UNITED STATES v. WILLIAMS.
### No. 2716.

Circuit Court of Appeals, Tenth Circuit.
Nov. 3, 1943.

Rehearing Denied Dec. 13, 1943.

Marvin J. Sonosky, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Whitfield Y. Mauzy, U. S. Atty., of Tusla, Okl., and Vernon L. Wilkinson and S. Billingsley Hill, Attys., Dept. of Justice, both of Washington, D. C., on the brief), for appellant.

Eben L. Taylor, of Tulsa, Okl. (Saul A. Yager, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Williams brought this section against Callie Bushyhead, Butler Bushyhead, Liddie Bushyhead, Joe Bushyhead, Ross Bushyhead, Robert Lee Bushyhead, the unknown

heirs of William Bushyhead, and the unknown heirs of Dennis Bushyhead, to quiet the title to a tract of land situate in Delaware County, Oklahoma.

On July 16, 1919, the land involved herein was purchased by William Bushyhead, a full-blood Cherokee Indian, with funds derived from oil royalties reserved under an oil and gas lease of his restricted allotment. Such funds were held by the Secretary of the Interior in trust for his benefit. The land was conveyed to William Bushyhead by Lon T. Hampton and Lulu R. Hampton by a Carney-Lacher form of deed, which provided:

" * * * · that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto executed during the lifetime of said grantee at any time prior to April 26, 1931, shall ·be of any force and effect or capable of confirmation or ratification unless made with the consent of and approved by the Secretary of the Interior."

On March 21, 1934, William Bushyhead and Callie Bushyhead, his wife, executed a warranty deed purporting to convey the land to F. M. Hartley. The deed was not approved by the Secretary of the Interior. Thereafter, the interest, if any, acquired by Hartley passed by mesne conveyances to Williams. William Bushyhead died October 16, 1935, leaving as his sole heirs-at-law his widow, Callie Bushyhead, and five sons, all of whom are full-blood Cherokee Indians.

Notice of the pendency of the instant suit was served on the Superintendent of the Five Civilized Tribes pursuant to the provisions of § 3 of the Act of April 12, 1926, 44 Stat. 240. The United States caused the suit to be removed to the District Court of the United States for the Northern District of Oklahoma where it filed a complaint in intervention wherein it alleged that the Act of Congress of May 10, 1928, 45 Stat. 495, extended the restrictions against alienation of the land while it was held by William Bushyhead for a period of 25 years from April 26, 1931, and that the conveyance from William Bushyhead and Callie Bushyhead, not having the requisite approval, was void.

The trial court held that the restrictions were not extended and entered its decree quieting the title in Williams. The United States has appealed.

Section 1 of the Act of May 27, 1908, 35 Stat. 312, provided that lands theretofore or thereafter allotted to enrolled full-bloods should not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, "except that the Secretary of the Interior" might "remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he" might "prescribe."

Pursuant to such statutory authority, the Secretary of the Interior prescribed a rule reading, in part, as follows:

"Where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes, of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted lands * * * the superintendent * * * shall cause a conveyance of such lands to be made on a form of conveyance containing an habendum clause against alienation or encumbrance until April 26, 1931."

Section 1 of the Act of May 10, 1928, 45 Stat. 495, extended the restrictions against alienation of "the lands allotted to members of the Five Civilized Tribes" of one-half or more Indian blood for an additional period of 25 years from April 26, 1931. Section 2 of such Act extended the provisions of § 9 of the Act of May 27, 1908, 35 Stat. 315, as amended by the Act of April 12, 1926, 44 Stat. 239, except the second proviso thereof for a period of 25 years from April 26, 1931.

██ The royalties derived from the restricted allotment were held in trust by the Secretary of the Interior for the benefit of William Bushyhead and continued to be restricted while so held. The land purchased by such funds continued to be restricted until April 26, 1931, by virtue of the rule above quoted and the restrictive clause in the deed.[1]

The question here presented is whether the Act of May 10, 1928, extended such restrictions.

---

[1] Sunderland v. United States, 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L.Ed. 259; Mott v. United States, 283 U.S. 747, 750, 751, 51 S.Ct. 642, 75 L.Ed. 1385; United States v. Goldfeder, 10 Cir., 112 F.2d 615, 616; United States v. Watashe, 10 Cir., 102 F.2d 428, 430; United States v. Brown, 8 Cir., 8 F.2d 564, 568.

■ In substance, there was a mere conversion of trust property. Oil, a natural product of the land, was produced and sold from the restricted allotment. A portion of the proceeds derived from the sale of the oil was paid to William Bushyhead as reserved royalties and was held by the Secretary of the Interior under the same trust as the allotted land.[2] Such funds were then converted into the land involved herein. It is well settled that whenever property in its original state and form has been impressed with a trust, no change in that state and form can divest it of its trust character, so long as it remains capable of clear identification.[3]

■■ Since the land was acquired with funds derived from the restricted allotment and was held under the same trust, we are of the opinion that it constituted "lands allotted to members of the Five Civilized Tribes" as that phrase is used in § 1 of the Act of May 10, 1928.

That it was the desire of the Secretary of the Interior to have the restrictions extended, both with respect to allotted lands and restricted lands into which allotted lands had been converted, is evidenced by a letter dated March 7, 1928, from the Secretary of the Interior to the Chairman of the Senate Committee on Indian Affairs. That it was the intent of Congress so to extend such restrictions by the Act of May 10, 1928, is manifest by the fact that the Secretary's letter was printed in Senate Report 982, 70 Cong., 1st Session. The letter, in part. read:

" * * * it appearing that in the cases of the full-blood and other restricted Indians of the Five Civilized Tribes there is need of the continued protection of the Government in relation to their restricted Indian property and income therefrom, it is believed that, * * * the restrictions on their *allotted and other restricted lands* should be extended for an additional period of 25 years commencing on April 26, 1931, and legislation for that purpose should be enacted." (Italics ours.)

This construction accords with the policy of Congress that when the proceeds derived from the sale of restricted lands are invested in other lands, the purchased lands shall also be restricted. See Act of March 2, 1931, 46 Stat. 1471, as amended by Act of June 30, 1932, 47 Stat. 474, 25 U.S.C.A. § 409a; Act of January 27, 1933, 47 Stat. 777; Act of May 19, 1937, 50 Stat. 188, 25 U.S.C.A. § 412a.

To hold otherwise would produce anomalous results. Where an allottee continued to hold allotted lands on April 26, 1931, the restrictions would be extended for a period of 25 years. But where an allottee, with the consent of the Secretary of the Interior, had exchanged his allotment for other land, or had sold his allotment and with the proceeds of the sale purchased other land, restricted by virtue of the rule and the provisions of the deeds until April 26, 1931, the latter restrictions would not be extended. Obviously, there was as much reason to continue the latter restrictions as the former. Moreover, land acquired on April 25, 1931, in exchange for a restricted allotment or with the proceeds derived from the sale of a restricted allotment, and restricted by virtue of the rule and the provisions of the deeds, would be freed of restrictions on April 26, 1931. Whereas, if such lands were so acquired on April 27, 1931, and were restricted by virtue of the amended rule[4] and the provisions of the deeds, under the doctrine announced in Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259,

[2] Sunderland v. United States, 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L.Ed. 259.

[3] Ward v. United States, 10 Cir., 139, F.2d 79, decided Nov. 3, 1943; United States v. Thurston County, Neb., 8 Cir., 143 F. 287, 292; National Bank of Commerce v. Anderson, 9 Cir., 147 F. 87, 89, 90; National Bank v. Insurance Co., 104 U.S. 54, 67, 26 L.Ed. 693; Cook v. Tullis, 85 U.S. 332, 341, 342, 18 Wall. 332, 341, 342, 21 L.Ed. 933; Republic Supply Co. v. Richfield Oil Co., 9 Cir., 79 F.2d 375, 377.

[4] On June 27, 1928, the rule was amended so as to provide for the following restrictive clause in such deeds:

"To have and to. hold said described premises, unto the said grantee—heirs and assigns, forever, free and clear and discharged of all former grants, charges, taxes, judgments, mortgages, and other liens and encumbrances of whatsoever nature, subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land herein described or the title thereto shall be of any force and effect, unless approved by the Secretary of the Interior or the restrictions from said land are otherwise removed by operation of law." 25 Code of Federal Regulations, § 241.44.

they would remain restricted until April 26, 1956. We cannot think that Congress intended these absurd consequences.

Moreover, the Congress, by express language, provided that the restrictions imposed by the second proviso of § 9 should not be continued. Had it intended not to continue the restrictions upon purchased lands into which the restricted allotment had been converted, it is reasonable to assume that it would likewise have so expressly provided.

The judgment is reversed and the cause remanded with instructions to proceed further in accordance with this opinion.

