Leva S. DRUMMOND, Individually and as Executrix for the Estate of Gent Drummond, Appellee,

v.

Virginia Harragara JOHNSON, formerly Virginia Pratt, Augustus Homer Pratt, Mary Josephine Pratt, Mifaunwy Valencia, Yvonne Annette Pratt, Marlene Pratt, Catherine Grace Mirranda, and Virgil Charles Pratt, Appellants.

No. 54032.

Supreme Court of Oklahoma.

March 16, 1982.

Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., Hubert H. Bryant, U. S. Atty., Robert P. Santee, Asst. U. S. Atty., Tulsa, Dirk D. Snel, Atty. Dept. of Justice, Washington, D. C., for appellant, Augustus Homer Pratt.

Kane, Kane, Wilson & Mattingly, Pawhuska, for appellee.

LAVENDER, Justice:

This case involves correlative rights and justiciable status of both restricted and unrestricted Osage Indians, and the United States Government.

From the complex web of factual events and circumstances, we glean the following which are essential to the presentation and resolution of the issues in this case:

Myron Bangs, Jr. died a resident of Osage County, Oklahoma. While Bangs estate was being probated, Henry Pratt, Jr. died on May 18, 1962, intestate, being survived by his widow Virginia Harragara Pratt, now Johnson (she having remarried after the death of Henry Pratt, Jr.), who was unrestricted, and by seven children, several of whom were minors and all of whom were restricted Osages. At the time of his demise, Henry Pratt, Jr. was engaged in contesting the will of Myron Bangs, Jr., claiming a portion of the Bangs estate by reason of blood relationship to Bangs. Proceedings were instituted in Osage County, Oklahoma, to probate the estate of Henry Pratt, Jr., deceased, and on May 15, 1962, an administrator was appointed.

On July 28, 1962, Virginia Harragara Johnson entered into a written contract with Gent Drummond by the terms of which she agreed to sell to Drummond all land which she might receive from the estate of Myron Bangs, Jr. for a sum equal to the appraised value of the real estate as determined by the Bangs estate appraisers. This contract was recorded in the office of the County Clerk of Osage County.

On March 1, 1963, a final decree was entered in the Estate of Henry Pratt, Jr. which directed that one-third of all of the property of which Henry Pratt, Jr. died seized and possessed and "including but not limited to a contingent interest in the estate of one Myron Bangs, Jr. be distributed to Virginia Harragara Johnson." The order became final on April 1, 1963. It is the ownership of an undivided interest of Virginia Harragara Johnson in a 480-acre tract in Osage County which came to her from and out of the estate of Myron Bangs, Jr. via the demise of Henry Pratt, Jr. which became the subject matter of this action.

On September 5, 1969, a contract of settlement in writing was entered into between the proponents and contestants of the last will and testament of Myron Bangs, Jr. pursuant to which it was agreed that the estate of Henry Pratt, Jr. would receive the land in question (480 acres) from the Bangs estate.

On September 14, 1969, the probate division of the district court of Osage County authorized the administrator of the Pratt estate and the guardian ad litem for the minor children to execute the contract dated September 5, 1969. The contract was then submitted to the Interior Department which approved it, on the condition that the heirs of the estate of Henry Pratt, Jr. agree by supplemental settlement on a division of land among themselves.

A final decree was entered in the probate proceedings in the estate of Myron Bangs, Jr. in which distribution to the estate of Henry Pratt, Jr. of the interest in the subject property was ordered "subject to the heirs of the estate of Henry Pratt, Jr.

agreeing by supplemental settlement on a division of the land with which we are concerned."

On April 16, 1970, a written agreement styled "Contract of Settlement and Agreement Between the Heirs of Henry Pratt, Jr.," was entered between Virginia Harragara Pratt Johnson and the children of Henry Pratt, Jr., deceased, pursuant to which upon final distribution of the estate of Henry Pratt, Jr., Virginia Harragara Johnson is to receive as her full distributive share of the realty passing to the Estate of Henry Pratt, Jr. from the Estate of Myron Bangs, Jr. free of any claims on the part of the children certain lands totaling 160 acres, and the seven children accepted 320 acres as their full distributive share of the 480 acres passing from the Bangs estate to the Pratt estate. The agreement also provided for the division of cash and Osage Indian headright interest received from the Bangs estate.

The April 16 settlement agreement was approved by the probate division of the District Court of Osage County, and was approved by the acting Muskogee area director of the Bureau of Indian Affairs on May 21, 1970. The Pratt estate was distributed pursuant to the decree of March 1, 1963, on September 18, 1970.

Partial payment of the purchase price for the interest in real estate was made by Drummond.

Gent Drummond died and his estate is being probated in Osage County, Oklahoma. Plaintiff below and appellee here was appointed executrix for the estate of Gent Drummond, deceased.

It was at this stage of affairs that Leva S. Drummond, individually and as executrix for the estate of Gent Drummond, filed the suit now before us against defendants below, who are the widow of Henry Pratt, Jr., and the children of Henry Pratt, Jr. In the suit plaintiff seeks specific performance of the agreement of July 28, 1962, to convey the undivided one-third interest in the real estate tract, and to determine that the children of Henry Pratt, Jr. have no right, title, or interest in her undivided ⅓ interest in the 480-acre tract in question.

Virginia Harragara Johnson died after the suit was filed and before judgment was entered. The only defendant below who entered an appearance and contested the case was Augustus Homer Pratt, a restricted Osage Indian, who was and is represented by the United States District Attorney for the Northern District of Oklahoma. From a judgment in favor of the plaintiff below, defendant below, Augustus Homer Pratt appeals.

Appellant contends that the District Court of Osage County had no jurisdiction over the subject matter of the suit because all of the defendants except Virginia Harragara Johnson were restricted Osage Indians and that all of the land except that owned by Virginia Harragara Johnson were restricted Osage Indian lands; that the action was actually one to quiet title, and since the United States had not consented to be sued in state court in a quiet title action involving restricted Osage Indian lands, the court lacked jurisdiction.

Acts of Congress which restrict and control the alienability of lands in the hands of persons having Osage Indian blood insofar as they pertain to the issues in this case, are as follows:

Section 3 of the Act of Congress of February 27, 1925, 43 Stat. 1008 provides:

"Lands devised to members of the Osage Tribe of one-half or more Indian blood or who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinabove set forth shall not be subject to the lien of any debt, claim, or judgment except taxes, or be subject to alienation, without the approval of the Secretary of Interior."

Section 8 of the Act of Congress of April 18, 1912, 37 Stat. 88 provides:

"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the State of Oklahoma: Provided, That no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

Section 3 of the Act of April 18, 1912, 37 Stat. 86 provides:

"That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe * * * shall, in probate matters, be subject to the jurisdiction of the county courts of the State of Oklahoma * * * provided further, that no land shall be sold or alienated under the provisions of this section without the approval of the Secretary of the Interior."

A brief history of the development of Osage Indian land law is set forth in *Donelson v. Oldfield*, Okl., 488 P.2d 1269 (1971) and need not be repeated here.

It is the manner in which Virginia Harragara Johnson acquired the undivided one-third interest in the 480-acre tract, and the legal consequences thereof which determines whether an alienation occurred, and hence Leva Drummond's right to maintain this action as against the claim of sovereign immunity of the United States.

■ It is apparent that Virginia Harragara Johnson's title came to her under the laws of succession, and not by way of a last will and testament, since the September 5, 1969, contract of settlement between the proponents and contestants of the Bangs will determined that the estate of Henry Pratt, Jr. would receive a one-third interest in the land, contrary to the provisions of

Bang's last will and testament. By final decree of the probate division of the District Court of Osage County on March 1, 1963, it was determined that the one-third interest owned by Henry Pratt, Jr. passed to Virginia Harragara Johnson by way of the laws ‾of succession, Henry Pratt, Jr. having died intestate. Since Virginia Harragara Johnson was not a restricted Indian, she had the same right to contract concerning her interest and to dispose of the same as she saw fit as any other sui juris individual.[1]

■ Did Johnson as a sui juris person have a right to contract to sell to Gent Drummond her interest in the land on July 28, 1962? We hold that she did. In the case of *In Re Gentry's Estate*,[2] this Court held that the administrator has the right to the possession of the real as well as the personal estate, and may receive all rents and profits of the real estate until the estate is settled up and delivered over to the heirs by order of the probate court, "but ... this does not change the title which vested in the heirs, subject to the right of possession by the administrator." In *Leedy v. Ellis County Fair Ass'n*,[3] we held that such interests constitute property subject to devise or alienation, and subject to descent and distribution as assets of a decedent's estate. At decedent's death, such interests go to the heirs "by succession, to be distributed to them or to their assignees ..., subject to the debts of (his) estate."[4]

■ We now turn to the effect of the April 16, 1970, "Contract of Settlement and Agreement Between the Heirs of Henry Pratt, Jr." This agreement was made in compliance with the condition imposed in the Interior Department's approval of the settlement agreement of September 5, 1969. In the agreement of April 16, 1970, it was determined that the vested interest of Virginia Harragara Johnson in the land which

---

1. *U.S. v. Mullendore*, 30 F.Supp. 13, appeal dismissed 111 F.2d 898 (10th Cir. 1940).

2. 158 Okl. 196, 13 P.2d 156 (1932).

3. 188 Okl. 348, 110 P.2d 1099 (1941).

4. In accord, see *Odle v. Baskins*, 190 Okl. 664, 126 P.2d 276 (1942); *Hitt v. Hitt*, Okl., 258 P.2d 599 (1953); 23 Am.Jur.2d Descent and Distribution, §§ 21, 23.

was part of the Bangs estate was a 160-acre tract, and the interest of each child was an undivided ⅛th interest in 320 acres out of the 480-acre tract which was a part of the Bangs estate. If an alienation of restricted Osage Indians' lands occurred in the making of the agreement of April 16, 1970, the impediment thus imposed was removed when the agreement was approved by the Bureau of Indian Affairs on May 21, 1970.

■ Compromise and settlement agreements among heirs, distributees, devisees, and legatees of a decedent's estate will be enforced if made between persons having the legal capacity to contract.[5] But contracts are binding only upon those who are parties thereto,[6] and are enforceable only by the parties to a contract, or those in privity with it, unless the contract is made for the express benefit of a third party, in which case the third party beneficiary may enforce the same.[7] Neither Gent Drummond nor his successors or representatives were parties to the contract which partitioned the 480-acre tract by agreement between Virginia Harragara Johnson and the issue of Henry Pratt, Jr. Neither could Virginia Harragara Johnson effectively partition property, title to which she did not own.

■ No act of conveyance and no alienation was involved in the making of the partition agreement. An actual partition of land does not create any new title to the shares set off to the parties to be held in severalty. While its effect is to locate the share of each in his allotted parcel of the land, and extinguish his interest in all the others, the title by which he holds his divided share is the same as that by which his undivided interest in the estate in common was held.[8] The partition agreement met the condition imposed by the Department of Interior; but the fact remains, the partition agreement did not affect the vested alienable interest of Gent Drummond in the undivided one-third interest in the 480-acre tract. Thus, the Decree of Distribution of October 30, 1969, determining that Virginia Harragara Johnson was entitled to receive an undivided one-third interest of the estate of Henry Pratt, Jr. including the tract in question determined her right of inheritance under the laws of succession; but previously having divested herself of her interest in the title to the tract by reason of her contract with Gent Drummond, her remaining interest was confined to receiving the balance of the purchase price upon the tender thereof by Gent Drummond or his representative. The vested contractual right to title to the property was not impaired by the decree of distribution,[9] whether that right be characterized as that of a mortgage,[10] or beneficiary of a trust.[11]

■ Thus the case before us funnels down to this: Did the District Court of Osage County have jurisdiction to hear and determine the suit brought by the representative of Gent Drummond to specifically enforce Drummond's contract to purchase the undivided one-third interest in the tract of land title to which had become vested in Virginia Harragara Johnson from her estate and to determine that the seven restricted Osage Indian children of Henry Pratt, Jr., deceased, have no right, title, or interest in said undivided one-third interest in said tract, as against the claim of the United States Government that the suit is in effect one for the alienation of restricted

5. 31 Am.Jur.2d Executors and Administrators, § 12.

6. 17 Am.Jur.2d Contracts §§ 294, 297.

7. *Electric Supply Co. v. City of Muskogee,* 171 Okl. 130, 42 P.2d 140 (1935).

8. 59 Am.Jur.2d Partition § 189; 132 A.L.R. 630, 637, 173 A.L.R. 1216, 1218.

9. *Baker v. Tulsa Building & Loan Ass'n,* 179 Okl. 432, 66 P.2d 45; *Walker v. Nix,* 196 Okl. 365, 165 P.2d 378 (1946).

10. *Foster v. Marshall,* 141 Okl. 246, 284 P. 882 (1930).

11. *Leedy v. Ellis County Fair Association,* 188 Okl. 348, 110 P.2d 1099 (1941); *In re Reid's Estate,* 26 Cal.App.2d 362, 79 P.2d 451; *Dunn v. Yakish,* 10 Okl. 388, 61 P. 926; *Scott-Baldwin Co. v. McAdams,* 43 Okl. 161, 141 P. 770.

Osage Indian Lands owned by restricted Osage Indians?

Black's Law Dictionary, Fifth Edition, defines "alienation" as follows:

"In real property law, the transfer of the property and possession of lands, tenements, or other things, from one person to another. The term is particularly applied to absolute conveyances of real property. The voluntary and complete transfer from one person to another. Disposition by will. Every mode of passing realty by the act of the party, as distinguished from passing it by the operation of law."

No transfer of the 480-acre tract from the restricted Indian children to Drummond is involved in the suit. No mode of passing realty by the act of a party is involved. The plaintiff below only seeks a judicial determination of the vesting of title in real estate and the enforcement of a valid contract to sell the same against Virginia Johnson's estate, neither of which will require a future conveyance or transfer of title by the restricted Indian defendants; hence, no "alienation" of restricted Indian lands is involved.

Is the United States nevertheless a necessary or indispensable party to the suit by reason of its interest and concern engendered by the fact that seven of the eight defendants below are Osage Indians who do not have certificates of competency?

 The interest of the federal government in the Indian tribes is such that its right to bring or maintain an action to protect their property, to restrain interference therewith, or to cancel conveyances made by individual Indians in violations of restrictions imposed by Congress cannot be questioned.[12]

The case of *Town of Okemah, Okl. v. United States*,[13] involved the question of whether the United States is an "indispensable party" to an action wherein condemnation was sought of lands allotted to members of the Five Civilized Tribes. In holding that the United States was an indispensable party, the Court said (at page 964):

"Members of the Five Civilized Tribes who own allotted lands restricted against alienation are under the guardianship of the United States; they are wards of the Nation so far as the alienation of such lands is concerned. During the continuation of such guardianship, it is the right and duty of the United States to enforce the restrictions designed for the security of the Indians by all appropriate means. 'The national interest is not to be expressed in terms of property, or to be limited to the assertion of rights incident to the ownership of a reversion or to the holding of a technical title in trust.' It has a governmental interest in the enforcement of restrictions. It is not essential that it should have a pecuniary interest. Where lands are held by members of the Five Civilized Tribes under patents in fee with restraints on alienation, a decree undertaking the alienation of the Indians' interest in the lands in a suit to which the United States may sue to cancel the decree and set aside the conveyance made pursuant thereto. The United States is an indispensable party to any action wherein the relief sought would impair its governmental function to protect the allotted lands against alienation."

The enunciations of the Court in *Town of Okemah, supra*, apply equally to the Osage Indians to the degree that alienation of their lands are restricted by Acts of Congress pertaining to the Osages.

**12.** *United States v. Rickert*, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; *Mullen v. United States*, 224 U.S. 448, 32 S.Ct. 494, 56 L.Ed. 834; *Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; *Mott v. United States*, 283 U.S. 747, 51 S.Ct. 642, 75 L.Ed. 1385; *United States v. Moore Mill & Lumber Co.* (C.A. 9th Cir. 1963) 313 F.2d 71; *United States v. Board of Com'rs of Osage County*, 251 U.S. 128, 40 S.Ct. 100, 64 L.Ed. 184 (1919); *La Motte v. United States*, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410 (1921); *United States v. City of McAlester, Okl.* (C.A. 10th, 1979), 604 F.2d 42; *Sadler v. Pub. Nat. Bank & Trust Co. of New York* (C.A. 10th Cir. 1949) 174 F.2d 870; *Bilby v. Malone*, 130 Okl. 217, 266 P. 760 (1928).

**13.** C.A. 10th (1944), 140 F.2d 963.

The "interest" of the United States government in the case before us is minimal. Giving that interest its most pregnant visage, it is limited to the protection of Augustus Homer Pratt, a restricted Osage Indian, from some possible overreaching or abuse of his rights peculiar to him by reason of his not having a certificate of competency. Such protection was fully afforded by his representation in the case by the United States District Attorney.[14]

The United States cannot be bound by the judgment in this action since it is not a party to the suit.[15] The denial of appellant's claim that the United States is an indispensable party to the suit neither impairs a governmental function, nor leaves the controversy in a situation inconsistent with equity and good conscience, and we therefore hold that the trial court was correct in its determination that the United States was not an indispensable party to the case.[16]

The judgment of the court below is affirmed.

BARNES, V.C.J., and HODGES, SIMMS, OPALA and WILSON, JJ., concur.

IRWIN, C.J., DOOLIN and HARGRAVE, JJ., dissent.

DOOLIN, Justice, dissenting:

The facts are succinctly stated by the majority. It is the application of the law to the facts that prompts this opinion.

By way of clarification and for sake of the argument let us assume for the moment that the seven children of Henry and Virginia Pratt were not restricted Indians. At the death of the father/husband, Virginia would have inherited u/d ⅓rd of the 480 acre estate and the children an u/d ⅐th of ⅔rds (²⁄₂₁ each) of such estate. Under the assumed conditions when Virginia contracted to sell to Drummond all she was awarded in the Bangs Estate, such a contract would have entitled Drummond to specific performance action for an u/d ⅓rd of the 480 acres. Virginia's statutory share was ⅓rd of the entire 480 acres under 84 O.S. 1971, § 213, First.

But, because the seven siblings of Henry and Virginia Pratt were restricted Indians, they are subject to 37 Stat. 86, § 3 which in pertinent part states "... no land shall be sold or alienated without the approval of the Secretary of Interior," or in this case the Muskogee, Oklahoma area director of the Bureau of Indian Affairs. See USCS Uncodified Material 1369.

By the approval of the Secretary of Interior (Secretary or Bureau) of the family settlement or division of the land in the Henry Pratt Estate, descending from the Bangs Estate, the u/d ²⁄₂₁st interest in each of the seven children as to the 160 acres *was set over* to Virginia (sold or alienated under 37 Stat. 86.) The alienation was in exchange for Virginia's u/d ⅓rd in the remaining 320 acres. The approved alienation preserved the *fractional interests* in the estate of the widow and children and, in reality amounts to or is tantamount to an alienation of the seven children's interest in the separated 160 acres awarded to Virginia under the family partition settlement. (Partition in kind.)[1]

When the Secretary approved the family settlement of the Bangs inheritance in the husband/father's estate (Henry Pratt,) he approved an alienation under 37 Stat. 86 of

---

**14.** *Gibbs v. Oklahoma Turnpike Authority*, Okl., 285 P.2d 190 (1955).

**15.** *Choctaw and Chickasaw Nations v. Seitz* (C.A. 10th 1951), 193 F.2d 456.

**16.** *Choctaw and Chickasaw Nations v. Seitz*, *id.*; *Jackson v. Sims* (C.A. 10th 1953) 201 F.2d 259.

**1.** See also § 6, 37 Stat. 86, Ch. 83, April 16, 1912:

"... *Provided*, That no partition or sale of restricted lands of a deceased Osage allottee shall be valid until approved by the Secretary of Interior. Where some of the heirs are minors ... partition of said land shall be valid when approved by the Court and the Secretary of Interior. (Emphasis by statute). See also 25 C.F.R. § 127.54.

the seven restricted Indians u/d ⅔rds interests in at least 160 acres of their properties.[2]

There can be little doubt the approved partition dealt with amounts to an alienation and since the United States Supreme Court has held a guardian's lease of restricted Osage land is subject to approval by the Secretary of Interior, certainly the "partition in kind" of Osage land is likewise "burdened."[3]

The Secretary's authority to condition the disposition in both the Henry Pratt and Bangs Estate is established.[4] What then the majority opinion accomplishes or affects by the action of the Osage County District Court, is the negation of the Secretary's power of approval.

## II

For another reason the majorities' position is not well founded.

The object of this action is specific performance of contract for real property. The res controversa is what constitutes "all the land which she (Virginia) may inherit from the said Myron Bangs."[5] (Parenthetical phrase supplied.)

The Drummonds argue, and the majority adopt the theory, that on the death of Henry Pratt, an u/d ⅓rd of 480 acres vested in Virginia and she thereafter contracted to sell this inheritance to G. Drummond.

But, the majority opinion overlooks three paragraphs in the sales contract, which I believe must be considered in dealing with the res controversa. Virginia states she is a *claimant* to an *interest* in *all* the real property owned by her husband in the Bangs Estate. She agrees that *after* it has been *ascertained* what proportionate part she will *eventually* own, she will *sell* her interest in such land as Pratt's widow to Drummond.[6]

In construing a contract the *entire* instrument should be read together, and if possible every part should be made effective giving words their ordinary and accepted meaning.[7] Likewise, in construing contracts a court should place itself in the position of the contracting parties at the time the contract was entered into and consider the instrument, the circumstances prompting it, as well as the surrounding circumstances as well. The court should then determine from consideration of such elements the sense or meaning of the contract.[8]

2. Heirs' contract dated 4–16–70, approved by Director of BIA 5–25–70, provided in pertinent part:

"(1) Upon final distribution of the Estate of Henry Pratt, Jr., Virginia Harragara Johnson shall receive as her full distributive share of the realty passing to the Estate of Henry Pratt, Jr., from the Estate of Myron Bangs, Jr., and as her separate property free and clear of all claims upon the part of PARTIES OF THE SECOND PART (second parties are the seven Indian heirs), the following described realty, to-wit: Lot 4, Section 3; Lots 1 and 2, Section 4, Township 23, Range 9 SE¼ of SW¼ of Section 33, Township 24, Range 9, Osage County, Oklahoma." (Parenthetical phrase supplied).

3. *La Motte v. United States*, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410 (1920).

4. *Scott v. Beams*, 122 F.2d 777, 778, 786 (1941 10th Cir.); *Udall v. Taunah*, 398 F.2d 795, 797 (1968 10th Cir.)

5. From the Contract of Sale between Drummond and Virginia, see footnote 2, supra.

6. "WHEREAS, first party is a claimant to a portion of the Estate of Myron Bangs, deceased, and will, if successful in her claim, become an owner of an interest in all the real property owned by the said Myron Bangs, deceased; and

WHEREAS, the identity of the heirs of Myron Bangs has not yet been ascertained and the proportionate part of his property which will eventually be owned by the first party; and

WHEREAS, it is the desire of the first party to sell her interest in any land which she may inherit from the said Myron Bangs and it is the desire of the second party to purchase the same.

NOW, THEREFORE, IN CONSIDERATION . . ." (Contract received as evidence under pretrial order.)

7. *Brown v. Coppadge*, 153 P. 817, 54 Okl. 88 (1915); *Wolf v. Blackwell Oil and Gas*, 186 P. 484, 77 Okl. 81 (1920).

8. *Iron Mountain Oil Co. v. Edwards*, 227 P. 150, 100 Okl. 4 (1924).

III

The real property and controversy has its root in the estate of Myron Bangs. By the decree in the Bangs Estate recorded in the County Clerk's records 9–24–70, the real property was set over and vested in the estate of Henry Pratt:

"Subject to the heirs of the Estate of Henry Pratt (Jr.) agreeing by supplemental settlement on a division of land ..."

I conclude Virginia took nothing except the full interest in and to 160 acres.[9]

The Henry Pratt final account filed 3–15–63 ordered, adjudged and decreed that the contingent interest of Henry Pratt's Estate in the Estate of Bangs was in litigation in the Department of Interior and the Courts of Oklahoma. It specially ordered, adjudged and decreed that the Pratt Estate remain open, "until the interest of the decedent (Henry Pratt) can be determined and further proceedings had ..." (Parenthetical phrase supplied.)

The interest of Pratt heirs therefore remained contingent until approval by the Secretary. This to me is the only logical conclusion to be drawn and it would follow therefore, that no rights to an u/d ⅓rd of 480 acres were in Drummond as the buyer under the contract. No interest could vest until the Secretary of Interior's approval of the family partition settlement.

I conclude that Virginia could never have sold or conveyed to Drummond an u/d ⅓rd in the 480 acre Bangs property. She could have contracted only to sell her full interest in the 160 acres which alienated interest bore the approval of the Secretary of Interior.

I am authorized to state that Justice Irwin supports the views herein expressed.