The STATE of Oklahoma for the Use and Benefit of the BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF CRAIG, State of Oklahoma, a municipal corporation, upon the relation of G. W. Glasco, R. C. Inman and D. E. Williams, residents, citizens and taxpayers of Craig County, in their own behalf and in behalf of all other taxpayers similarly situated, Plaintiffs in Error,

v.

CRAIG COUNTY AGRICULTURAL FAIR ASSOCIATION, a corporation, Raymond Pope and the First National Bank of Vinita, Oklahoma, a corporation, Defendants in Error.

No. 39879.

Supreme Court of Oklahoma.

Feb. 26, 1963.

Rehearing Denied April 16, 1963.

Josh J. Evans, Vinita, for plaintiffs in error.

Wheatley & Wheatley, Vinita, for defendants in error.

BERRY, Justice.

Herein plaintiffs in error will be referred to as "plaintiffs"; defendant in error, Craig County Agricultural Fair Association, will be referred to as "defendant" and when referred to collectively defendants in error will be referred to as "defendants".

On July 15, 1915, defendant, pursuant to the provisions of 2 O.S.1961 §§ 31 to 36, inclusive, was organized as an agricultural fair corporation and has since continued to exist as such.

In the matter of organizing the corporation, several residents of Craig County con-

tributed amounts varying from $25.00 to $250.00. Certificates of membership were issued to such contributors. It appears that these contributions were expended in acquiring four contiguous tracts of land in the mentioned county. Buildings were constructed on the land and until about 1956 the land was used for county agricultural fair purposes. It further appears that for the past several years, if not at all times, the Craig County Agricultural Fair has been conducted by an organization known as the "Craig County Free Fair Association". Beginning in 1956 this Association elected not to use the land for fair purposes and held fairs elsewhere in the county. A witness testified that while no reason was given defendant by those representing the mentioned association for ceasing to hold fairs on the land, the reason was possibly the "unsanitary condition" of the land. For several years the American Legion has conducted a rodeo on a portion of the land. At all relevant times buildings constructed on the land have been suitable for use for agricultural fair purposes.

The land has been treated as exempt from ad valorem taxes since acquired by defendant.

In 1959 defendant entered into a contract in writing to sell the land. It is not disputed by defendants that if the land is sold, defendant's grantee will be under no obligation to permit agricultural fairs to be conducted upon the land nor is it disputed that defendant does not intend to invest proceeds of the sale in other land that will be made available for agricultural fair purposes.

By appropriate pleadings, plaintiffs sought judgment enjoining defendant from selling the land, or, in the alternative, judgment requiring defendant to invest the proceeds of the proposed sale in land which would be made available for agricultural fair purposes.

In so far as material to the issue herein considered, defendants pleaded in their answer that under 2 O.S.1961 § 31, it was defendant's privilege to sell the land and that it was not required to reinvest or devote the proceeds to agricultural fair purposes.

Following trial of case to the court, judgment was rendered in defendants' favor. From order denying plaintiffs' motion for new trial which was directed to the mentioned judgment, plaintiffs perfected this appeal.

As indicated, the basic issue is whether power and authority rests in defendant to sell the land, and if such is true, must proceeds of the sale be reinvested in other land which will be available for agricultural fair purposes?

To our way of thinking, answers to the posed questions are found in the above cited statute which reads thusly:

"Agricultural Fair Corporations may purchase, hold or lease or otherwise acquire any quantity of land necessary for their proper operation, with such buildings and improvements as may be erected thereon, and may sell, lease, or otherwise dispose of the same at their pleasure. Such real estate must be held for the purpose of erecting buildings and making other improvements thereon, to promote and encourage agriculture, horticulture, mechanics, manufacturers, stock raising, 4-H Clubs, Future Farmers of America, Home Demonstration Clubs, poultry raising, arts, trades, crafts, hobbies, industry, commerce and the general welfare of the people and to cooperate with the State and Federal Agriculture Extension organizations, cooperative marketing associations, livestock and crop improvement associations, and such other farm, industrial, commercial or educational organizations as may be deemed advisable by the Corporation's Board of Directors."

Plaintiffs argue that since an agricultural fair corporation must hold its land for stated purposes, its land cannot be sold because (a) following sale the land would not be used for such purposes, and (b) if sold, a profit might inure to the members

of the corporation in violation of the provisions of 2 O.S.1961 § 33, to effect that "Agricultural Fair Corporations are not conducted for profit." We are unable to agree.

As we read Sec. 31, power and authority is clearly granted to agricultural fair corporations to sell their land. The provision thereof as to use of the land that plaintiffs rely upon does not, in our opinion, conflict with the provision relative to sale. As we read the statute, the Legislature intended to say that so long as such corporations hold land it must be used for stated purposes but did not say that following sale of the land it or proceeds accruing from the sale must be reinvested in land which must be used for such purposes. The provision of Sec. 33 relative to profit, prohibits the operation of an agricultural fair corporation for profit but does not prohibit a profit being indirectly realized through and upon the sale of its land. We add, it is not here contended that the motive of those who caused defendant to be organized was to acquire land, construct buildings thereon and sell at a profit. Therefore, that those who organized defendant did not proceed in good faith. Any suggestion to the contrary would be refuted by the fact that the land was developed for agricultural fair purposes and was available for such purposes for approximately 44 years.

At p. 518, Sec. 520, "Public Corporation", Abbott, it is stated that "The authority to dispose of public property may be granted by the state." It appears that under the common law all corporations, therefore so-called religious or charitable corporations, had unlimited power to sell their property and power to do so may be granted by statute. See 45 Am.Jur. "Religious Societies", Sec. 56, p. 766. As aforesaid, we are of the opinion that under the provisions of Sec. 31 power and authority was granted to agricultural fair corporations to sell their land.

Plaintiff argues that assuming authority to sell the land exists, the land was held in trust for agricultural fair purposes and for such reason proceeds of the sale will be stamped with such trust. In support of their argument plaintiffs cite United States v. Williams, (C.C.A. 10th) 139 F.2d 83 and cases from other Federal Circuits to the general effect that proceeds accruing from the sale of Indian land held in trust by the Federal Government for the benefit of an Indian ward constituted trust property. The fact that in the cited cases the land was held in trust for a ward of the Government, who continued to occupy said status following the sale serves to distinguish the cases from the instant case.

Plaintiffs' contention that defendant holds the land in trust is based upon the proposition that the land must be devoted to purposes set forth in Sec. 31. The duration of such trust or trust relationship depends upon the intent of the Legislature. See 89 C.J.S. Trusts § 92, at p. 923. As we read the applicable statutes it cannot be said that the Legislature intended that proceeds of the sale of land by an agricultural fair corporation be held in trust and reinvested in land which will be so held. On this score, we are of the opinion that where, as here, the organizers of such a corporation have proceeded in good faith in acquiring land for agricultural fair purposes and have made the land available for such purpose for a considerable period, that as to the public any trust relationship is ended upon the corporation's selling its land.

Plaintiff contends that "defendant having accepted the benefit of such tax-exempt status is now estopped from claiming or asserting that it has any of the characteristics of a private corporation, or that it has the right to sell its real estate without justifiable cause and to do whatever it pleases with the funds derived therefrom." No authority is cited in support of this contention. As pointed out in Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., 195 Okl. 131, 156 P.2d 340, use of property for a purpose recognized in Art. X, Sec. 6, Okla.Const., as bringing about an exemption from ad valorem taxes and

not ownership thereof is controlling. Plaintiffs do not contend that the use made of the land by defendant did not serve to render it exempt from ad valorem taxes. Therefore, the fact that no ad valorem taxes have been paid on the land while held by defendant is not thought to be of any significance.

Under the facts of this case, we are of the opinion that the trial court did not err in finding and holding that defendant was privileged to sell the land and distribute proceeds of the sale to its members.

Affirmed.